GALION IRON WORKS & MANUFACTURING COMPANY *v.*
OTTO V. MARTIN CONSTRUCTION COMPANY.

Opinion delivered February 20, 1928.

1. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL.—In an action by a buyer of a steam roller to recover the amount paid on its purchase price and damages, on account of misrepresentations as to its condition, a letter written by the seller to the buyer prior to the execution of the contract, stating that the roller was 60 per cent. as good as new and describing the boiler as being in good condition, *held* admissible to show false representations and fraud on the basis of which the sale was entered into, such evidence not being objectionable as varying the terms of the written contract subsequently executed.

2. EVIDENCE—FRAUDULENT REPRESENTATIONS.—Parol evidence of representations made by the seller's agent that a steam roller was ready to start operation, *held* admissible in a buyer's suit for damages on account of fraud under claim that the roller was worthless, where a contract of sale was subsequently entered into on the strength of such representations, and contained a guaranty that the goods were thoroughly serviceable and practical for the purposes for which they are designed.

3. FRAUD—REMEDY OF BUYER.—Where the seller of a steam roller, through its representatives, made false representations as to the condition of the roller for the purpose of inducing the sale, and the buyer, in reliance on such false statements, signed the contract of purchase, the buyer was not bound by the terms of the contract, but had a right to refuse to accept the property and to sue for resulting damages.

4. FRAUD—FALSE REPRESENTATIONS AS BASIS OF SUIT.—A suit by the buyer of a steam roller to recover payment made and damages on account of the worthless condition of the roller, in which the complaint alleged that, as a result of the seller's failure to furnish parts in accordance with the contract, the buyer was damaged, was based on false representations, in view of the allegation that the steam roller was wholly worthless for the purposes for which intended, and in view of the representations and guaranty that the goods were serviceable for such purposes.

5. SALES—RIGHT TO RECOVER PRICE.—Where a seller falsely represented that a steam roller was in condition for operation, in a suit by the buyer for false representations, it was not entitled to recover on notes given for the purchase price merely because it had supplied missing parts.

6. FRAUD—JURY QUESTION.—The issue whether the purchase of a steam roller was induced by the seller's false representations concerning its condition, precluding a recovery of the purchase price, *held* for the jury under the evidence in the buyer's action to recover damages for fraud.

7. SALES — FRAUDULENT REPRESENTATIONS — RECOVERY OF PRICE. —Where the purchase of a steam roller was induced by the seller's alleged false representations as to its condition, the seller was precluded from recovering the amount of the purchase price in the buyer's action for fraud.

8. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict supported by substantial evidence will not be disturbed on appeal.

9. FRAUD—EVIDENCE.—In a buyer's action against the seller for false representations in the sale of a steam roller, recovery on account of the worthless condition of the roller at the time of its delivery by the carrier to the buyer was not precluded by the absence of evidence as to its condition at the time of its delivery by the seller to the carrier.

10. FRAUD—NOTICE OF DEFECTS.—Where a suit for false representations in the sale of a steam roller was based on a claim that the roller was completely worn out and worthless, no notice of the defects was required.

11. FRAUD—SALE OF MACHINERY—NOTICE OF INTENDED USE.—The fact that no notice had been served on a seller as to the uses to which a steam roller was intended, did not prevent a recovery for false representations in its sale, where it appeared from the evidence that the seller knew the purpose for which the roller was to be used, and sold it for that purpose. ·

Appeal from Sebastian Circuit Court, Fort Smith District; *J. Sam Wood,* Judge; affirmed.

James B. McDonough, for appellant.

W. L. Curtis, for appellee.

MEHAFFY, J.   The Otto V. Martin Construction Company filed in the Sebastian Circuit Court the following complaint:

"Comes now the Otto V. Martin Construction Company and, for its cause of action against the defendant, states:

"1.   That the plaintiff is a corporation duly organized and existing under the laws of the State of Oklahoma, and has been domesticated and secured authority for the purpose of transacting business within the State of Arkansas, and that the defendant is a corporation organized and existing under the laws of the State of Ohio, and has a branch office for the purpose of transacting business within this State.

"2.   That on the 8th day of September, 1923, the plaintiff purchased a certain steam roller from the defendant, for which he was to pay the sum of $700 f. o. b. cars at Memphis, Tennessee; that at the time of making said purchase he paid the sum of $350 to apply thereon, and was to pay the remaining $350 on October 1 and November 1, 1923, in equal installments; that the defendant, through its agents and representatives, represented that said steam roller was in first-class operating condition and as good as new, with the exception of certain parts, which had been stolen, and which said defendant was to replace; that said roller was bought with the distinct understanding between plaintiff and defendant that it was for immediate use upon certain highway construction work in which plaintiff was at that time engaged.

"3.   That, when said steam roller reached Fort Smith, Arkansas, it was found to be old, dilapidated, and wholly worthless for the purposes for which the plaintiff intended to use it, and for the purposes which the defendant, through its agents, knew the plaintiff intended to use it, and that, after notice of its condition to the defendant, it failed, neglected and refused to furnish the parts

which it had agreed to furnish to recondition the roller,. or to refund to plaintiff the advanced payments made by it to the defendant on the purchase price of said roller, and for freight and other expenses incurred by it in connection therewith, which resulted in its damages and injury in the following sums, to wit:

1.  Amount paid to apply on the purchase price...$350.00

2.  To Breslin Boiler Works........................................ 259.61

3.  For freight on same............................................... 270.00

Making a total of...................................................$879.61

"That, as a result of the failure of said defendant to furnish said parts in accordance with the terms of their contract and agreement, said plaintiff was unable to have the use of said steam roller at the time and for the purposes for which it was purchased, and was therefore required to and did rent a steam roller for the months of November and December, 1923, and January and February, 1924, for which he was required to pay rental of $200 per month, or an aggregate amount of $800, and that, by reason of the matters and things hereinabove referred to, said plaintiff was further damaged by the actions and breaches of the defendant in said sum."

Plaintiff asked judgment against the defendant for the sum of $1,679.61, and costs.

The appellants owned a second-hand 10-ton steam roller, which was near Pontotoc, in the State of Mississippi. Appellee desired to purchase a steam roller, and, after some negotiations, E. W. Clark, agent of appellee, was sent to examine the roller, but did not go to Pontotoc, but went to Memphis, and did not examine the roller, but entered into a written contract of purchase. with one Berryhill, the sales agent of appellant, at Memphis. Said contract was signed, subject to the approval of Martin. Martin was called by telephone, and approved the contract, and a few days thereafter it was approved

by appellant's executive officer, F. W. Faber, secretary and treasurer. The roller was shipped from Pontotoc, Mississippi, to Fort Smith, Arkansas. The contract referred to is as follows:

"The following described goods, subject to the guaranty and conditions on the back of this order:

"1 Erie steam 10-ton tandem roller (used) just as it stands at Pontotoc, Miss., with exception of parts that have been stolen. We are to repair these. At $700.

"We hereby agree to receive the goods above specified and to settle for same with the Galion Iron Works and Manufacturing Company, Galion, Ohio, by the payment of seven hundred and no/100 dollars as follows: $350 in cash, and balance in warrants, notes or orders, drawn and executed according to law, and bearing 6 per cent. interest from date until paid.

"One note or order for $175, due October 1, 1923.

"One note or order for $175, due November 1, 1923.

"It is understood and agreed that all notes, orders, warrants, checks, drafts, money orders, or other evidences of payment shall be drawn to the order of the Galion Iron Works & Manufacturing Company.

"It is further mutually stipulated and agreed that the title and ownership of all property covered by this contract is to be and remain in said the Galion Iron Works & Manufacturing Company, its successors and assigns, until the purchase price thereof, with interest as above provided for, has been paid in full. In case any notes or warrants are given in settlement, the title and ownership of all of said property is to be and remain in the Galion Iron Works & Manufacturing Company, its successors or assigns, until each and all of such notes or warrants, or extensions or renewals thereof, or any part thereof, including all protest fees and expenses, have been paid.

"We hereby acknowledge an exact carbon copy of this order, which is not affected by any verbal agree-

ment, but which embodies the entire understanding, and is not subject to countermand.

                              "Otto V. Martin Const. Co.
                              "E. W. Clark.

"Accepted by the Galion Iron Works & Mfg. Co., Galion Ohio.   F. W. Faber, Secretary-Treasurer."

Following pencil notation: "Paid Ck. for $350 as cash payment.   Galion Iron Works & Mfg. Co.   By Fred Berryhill."

On the back:

"Conditions.   All agreements are subject to strikes, accidents, or other causes for delay over which we have no control.   All claims for defective or broken goods must be made in writing within thirty days after receipt of same.   All claims for goods broken or damaged in transit, or shortage in shipment, must be reported promptly, and said report must be accompanied by the freight receipt, properly noted by local freight agent at point of destination, showing shortage or damage, or both.

"Guaranty.   The goods specified on the reverse side of this order are guaranteed to be thoroughly serviceable and practical for the purpose for which they are designed.

"If found defective in either material or workmanship, we agree to replace such defective parts free of charge, f. o. b. factory.   Claims for defective parts must be made within one year from date of sale.

                              "The Galion Iron Works & Mfg. Co.
                              "Galion, Ohio."

The plaintiff's testimony tended to show that the roller was being used at the time; that a new one like it would cost from $3,600 to $4,000, and that appellant, in its statements to appellee, estimated this roller to be 60 per cent. as good as new.   That it needed some parts, but that it was in good condition.   There were no leaks, and it carried from 100 to 110 pounds of steam. The price of the roller was $700, $350 of which was paid in cash and two notes given for the balance.   It was

reported to Martin that the condition of the roller had
been fully described to him, that it was a good buy, and
Martin did not see the roller until it was delivered in
Fort Smith, on board the cars; that the roller was ready
to start operation, and that neither Clark, the representa-
tive sent by appellee to examine the engine, nor Berry-
hill, the representative of appellant, ever saw the roller.
Clark was a foreman of appellee, and Martin himself
confirmed the contract.   Martin did not see the roller for
three months.   It was sent to a machine shop, and Mar-
tin saw it in the shop in January.   He testified that it
was then a mass of junk.   He did not get the parts
referred to in the contract.   He tried to get them, but
the roller was out of date, and they did not make the
parts any more.   Appellee never did get the parts nec-
essary to put the machine in a condition necessary for
operation.   Could not get the parts.   Paid $259.61 to put
the boiler in condition, but could not get the rest of it.
Took the matter up with defendant, and defendant sent
a representative to Fort Smith in February, 1924.
Representative went with Martin to the machine shop
and looked over the roller, and said he did not want
Martin to think that the Galion Iron Works does things
that way.   That Mr. Berryhill had never seen the roller;
one of his agents has taken it in, and that he would see
that it is fixed up right away, and get the parts.   Appel-
lee never did get the parts, however.   They do not make
them any more.   The roller was not made by the Galion
Iron Works, but made by another person.

Numbers of letters and telegrams were introduced,
and appellee wrote appellant that it was their intention to
purchase necessary parts unless they heard from the
appellant immediately.   That he had been at the expense
of something like $200, and yet the matter was unad-
justed.

On February 22, 1923, there was a letter from appel-
lee to appellant in which it was stated that they had
been "expecting to receive a shipment of parts for the
second-hand Erie roller bought from your Memphis

branch the latter part of 1923, this arrangement being made by your Mr. McDonald on his recent inspection here. Will you help us to get this roller in working condition at the earliest possible moment?''

Witness testified that he got no reply to this letter; tried to get the parts himself; incurred an expense of $270 in freight and expense of $259.61 in repairing the boiler. He refused to pay this, and told Breslin to sell the boiler for junk; it could not be used; the frame was broken. Witness then testified, over the objection of appellant, that he had to rent a roller at $200 a month. The roller reached Fort Smith probably the latter part of October, 1923. Witness himself did not examine it. He saw the roller the first time when he went with McDonald, February, 1924.

Clark was not present, and witness testified that he did not know where he was. He was with plaintiff about a year ago.

The proof on the part of appellant tended to show that Faber was an executive officer, and had everything to do with making contracts and notes, and he had to approve or disapprove orders, notes or other collateral. When he approved an order it became an obligation. He received written order in evidence in this case, and this order contained the following: ''We hereby acknowledge an exact carbon copy of this order, which is not affected by any verbal agreement, but which embodies the entire understanding, and is not subject to countermand.''

Appellant received the notes; still holds them; had correspondence with plaintiff; received a letter on December 28 concerning the notes; appellant was urging the payment of the notes. That the roller was sold to appellee as a used roller, and just as it stood at Pontotoc. Agreed to replace all stolen parts, and did replace them.

He testified that there was no report by anybody having authority that the roller was in first-class condition and as good as new. The contract as set forth in the general order embodies all the terms and conditions,

and was approved by the executive officer, and no sales-
man has any authority to make any verbal statement.
Had no knowledge as to the uses to which plaintiff desired
to apply the roller. After the order was received,
appellant proceeded to replace all parts that were stolen.
Had no business relations whatever with the Breslin
Iron Works Company. The notes have never been paid.
Berryhill took charge of the Memphis office from Sep-
tember 1, 1923, as appellant's sales representative.

We do not think it necessary to set out the testimony
any further, except as attention may be called to it here-
after when necessary in the discussion of the ques-
tions raised.

The first contention of appellant is that the court
erred in admitting letters, telegrams and oral evidence
varying and contradicting and adding to the written
agreement, and urges that the objection refers especially
to a letter dated the 9th of June, 1923. It is contended
that that letter, being written three months before the
contract was made, is nothing more nor less than a part
of the negotiations which ultimately resulted in the mak-
ing of a contract, and that there is no ambiguity or doubt
about the contract, and that appellee did not rely on the
letter, because he sent his agent, Clark, to Mississippi and
Tennessee to see the roller. It is argued that, since Clark
was sent to Memphis to see the roller in operation, this
was sufficient to prove that plaintiff did not rely on the
letter of June 9.

Appellant cites and relies on *Goodwin* v. *Baker,* 129
Ark. 513, 197 S. W. 10. While the court held in that case
that prior negotiations leading up to the written con-
tract are merged, and that evidence of a contemporaneous
parol agreement is not competent to vary the terms of
the written agreement, yet it was said in that case:

"While the terms of the contract cannot be extended
by parol evidence, such evidence may be admitted to
show the circumstances under which the contract was
executed, in order to construe the language thereof.
* * * Courts may acquaint themselves with the per-

sons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described.''

The letter referred to stated where the boiler was situated, what the appellant gave for it, and also stated the price of a new boiler to be $3,600 to $4,000, and that they estimated this roller to be 60 per cent. as good as new, and further described the boiler as being in good condition, with no leaks, and that it carried from 100 to 110 pounds of steam.

This evidence did not contradict or vary the terms of the written contract. Moreover, another telegram dated July 25, 1923, was not objected to, and it read as follows:

''We assure you that condition of tandem roller has been fully described to you. It is a good buy, and upon receipt of your check for $350 and $350 with six per cent. interest, to be paid within ninety days, will ship roller per instructions your telegrams. Your inspector would be welcomed.''

This telegram was admitted, as we have said, without objection. Or rather, objection was made and withdrawn. This said that the condition of the tandem roller has been fully described, evidently referring to the description in the letter of July 9.

The next case cited and relied on by appellant is *Graves* v. *Bodcaw Lumber Co.*, 129 Ark. 354, 196 S. W. 800. In that case the court reiterates the doctrine that negotiations leading up to the written contract are merged therein, and parol agreements are not competent to vary the terms of the written agreement. In the first place, this letter did not vary the terms of the written agreement. This court has said:

''It follows that, where the parties have by bill of sale, as in this case, or any other instrument, reduced

the contract of sale to writing, and have not provided for any warranty, or have incorporated express warranties, no parol evidence can be heard to show in the first case that there was a warranty, or in the second, that there were other or wider warranties than those expressed. The written instruments are held to contain everything of a contractual character which the parties finally intended should be binding, regardless of all previous negotiations.    *    *    *    Deceits, and false representations, intentionally made, regarding material matters, for the purpose of misleading another to his injury, are not contracts in any direct sense. Every one may be presumed, indeed, to agree that he will regulate his conduct by the laws of his country and the rules of fair dealing, and will abide the consequences of failure and detection. But in no other sense are they contracts. They are torts, for which heretofore lay actions on the case for deceit.    *    *    *    They differ from warranties in two very material points. The latter cannot, when the contract of sale has been reduced to writing, be supplied by parol proof. The former can be shown by parol, for they are torts outside the contract. Warranties bind, if untrue, without any regard to the good faith of the warrantor. This arises from their contractual character. He takes the risk of their truth, and means to bind himself to make a recompense if they are not. But false representations must not only mislead, but must have been made fraudulently and with that intent.    *    *    *    He will not be excused for want of candor and good faith with regard to such matters, and will be held responsible for false representations, not made in good faith, believing them to be true. He is bound only to a fair exercise of his own judgment in behalf of the other party, and not for an honest mistake.''

The court, in speaking of instructions, continued: ''The eighth instruction remedies the defect, and is, in effect, what the former would have been with the addition above suggested. It might well have been given.'' *Hanger* v. *Evins & Shinn,* 38 Ark. 337.

This letter was competent, not to vary the terms of the written contract, but to show false representations, deceit and fraud, and this, as held in the case to which we have referred, is not a contract, but a tort. And this evidence did not vary the terms of the contract, but was introduced for the purpose of showing the circumstances under which the sale was made and under which the contract was made, and to show fraud.

Appellant refers to *Harrower* v. *Insurance Co.*, 144 Ark. 279, 222 S. W. 39. This case reaffirms the doctrine, about which there is no dispute, that prior oral agreements and antecedent writings forming part of the negotiations for a contract become merged in the subsequent written contract, and are incompetent as evidence for the purpose of enlarging the scope of such written contract.

The letters introduced in this case were not for the purpose of enlarging the scope of the written contract, but for the purpose of showing false representations and deceit.

It is contended by the appellant that there is no evidence of any misrepresentations made by the defendant's agent, Berryhill. Berryhill made the contract with Clark, made the agreement, and on the agreement made was a guaranty that the goods were thoroughly serviceable and practical for the purpose for which they are designed. And Martin testified that Berryhill told him, in a conversation, that the roller was ready to start operation.

"Parol evidence is always admissible to show that an instrument was obtained by fraud or duress, and so to avoid it. In the absence of misrepresentation, fraud, or deceit, a party to a transaction is bound by the writing evidencing the agreement, though he was in fact ignorant of its contents. * * * So, where one has been induced by false representations to indorse a note, parol evidence is admissible to prove that fact. Similarly, parol evidence is admissible to show that a person

was induced to enter a written contract to purchase goods by false and fraudulent representations as to their quality. * * * Likewise, the rule that parol representations are not admissible to vary the terms of a written agreement has no application to representations which amount to a fraud practiced in procuring subscriptions to corporate stock. * * * It is a plain fraud to secure the execution of an instrument by representations differing in important particulars from those contained in the paper, and, after the paper has been signed, attempt to compel literal compliance with its terms, regardless of the contemporaneous agreement without which it would never have been signed at all." 10 R. C. L. 1058.

"As a general rule, a person whose rights or liabilities are affected by a written contract may introduce parol evidence to show accident, mistake or fraud, whereby the writing fails to express the actual agreement, and to prove the modification necessary to be made, whether such variation consists in limiting the scope of the contract, or in enlarging and extending it so as to embrace land or other subject-matter which has been omitted through the fraud or mistake. The extrinsic evidence rule should not be invoked as a shield for fraud, or be applied so as to work injustice." 10 R. C. L. 1056.

The appellant's next contention is that the court erred in giving, at plaintiff's request, number 1-a. The instruction reads as follows:

"You are instructed that, if you find from a preponderance of the testimony that defendant, through its representatives, as an inducement, made false or fraudulent statements to plaintiff as to the condition of the roller in question, and that the plaintiff believed said false or fraudulent statements, and would not have signed the contract of purchase but for same, then and in that event he would not be bound by the terms of said contract or order, but would have the right to refuse to accept the property and sue for whatever damages, if any, is shown that it incurred on account of same."

This is an action for fraud and false representations inducing the contract, and the instruction above quoted is correct.

The appellant argues that the statement in plaintiff's complaint, "that, as a result of the failure of said defendant to furnish said parts in accordance with the terms of their contract and agreement, and that he was thereby damaged," shows conclusively that the complaint was based solely on the written contract. Appellant, however, overlooks that part of the complaint which states: "That, when said steam roller reached Fort Smith, it was found to be old, dilapidated and wholly worthless for the purposes for which plaintiff intended to use the same, and for the purposes which the defendant, through its agents, knew the plaintiff intended to use it," etc.

When you consider this allegation in the complaint, together with the representations made, not only by letters but by the contract itself, it shows very clearly that the suit was brought on the false representations. The guaranty on the contract said that the goods were guaranteed to be thoroughly serviceable and practical for the purpose for which they are designed. But the complaint alleges that appellant knew the purposes for which they were designed, and that they were wholly unfit for that. The appellant's argument made and authorities cited under this claim of error are all based on the theory that the suit was on the contract, and that a party would not be allowed to repudiate or rescind it and sue on it at the same time.

Appellant's next contention is that the court erred in giving instruction number two. This instruction, however, could not have operated to the prejudice of appellant, because the jury returned a verdict only for $350 that plaintiff had paid and the freight that he had paid.

It is appellant's next contention that its instruction number five should have been given. The complaint is that the court erred in adding to the instruction "unless

defendant is precluded from so doing by other instructions."

The instruction requested was properly refused, because it told the jury that, if the defendant supplied the stolen parts, it was entitled to recover on the two notes.

As we have already stated, the suit is based on deceit or false statements, and not on the contract. If the contract was induced by false and fraudulent representations, or deceit, then the appellant would not be entitled to recover simply by supplying the stolen parts. And we think the court therefore did not err in refusing to give this instruction.

It is earnestly contended by appellant that the court should have directed a verdict in favor of the defendant for the amount claimed in the two notes. We do not agree with the appellant in this contention. The plaintiff based his action on and directed his proof to the proposition that false representations had been made by the defendant, which induced the purchase of the property. There is sufficient proof on this issue to go to the jury. It is not a question here as to whether we should find for one party or the other under the proof, and not a question of the preponderance of the evidence, but the rule is, if there is any substantial evidence to support the verdict, it will not be disturbed by this court, and there is some substantial evidence to support the verdict.

Appellant argues that the plaintiff furnished no evidence to show the condition of the roller at the time it was delivered to the plaintiff by delivery to the carrier at Pontotoc, Mississippi. There is no direct evidence that the roller was worthless at that time. That is, nobody examined it and then testified as to its condition, but the testimony or evidence as to the condition of it after it reached Fort Smith, if true, shows that its condition must have been the same when shipped from Pontotoc. In other words, it could not have been in good condition, or the condition which appellant said it was in at the time it was shipped from Pontotoc, and

then have been in the condition which the evidence shows it was in when it reached Fort Smith. No notice of defects was required, because the suit is based on the claim that the roller was completely worn out and worthless.

As to the proposition that no notice was served on appellant as to the uses for which the roller was intended, we think the proof is ample that appellant knew the purpose for which it was to be used, and sold it for that purpose. In fact, it was alleged by the appellant that it was, at the time of the contract, being used in Mississippi for the same purpose. The letter of June 9 states that it is on a road being used in road construction in Mississippi; and we think the testimony in the case, while not very convincing, is sufficient to sustain the verdict, and that the court properly instructed the jury, and the judgment is therefore affirmed.