UNION MOTORS, INC. *v.* JAMES A. PHILLIPS

5-4087                                                410 S. W. 2d 747

Opinion delivered January 30, 1967

*Barber, Henry, Thurman, McCaskill & Amsler,* for appellant.

*U. A. Gentry,* for appellee.

LYLE BROWN, Justice. Appellee, James A. Phillips,

purchased an automobile from Union Motors, Inc. Phillips brought this suit to recover compensatory and punitive damages and alleged that he placed a verbal order for a demonstrator with low mileage and in all respects as good as new. He contends that the car delivered was so warranted, but had in fact been involved in a wreck and substantially damaged, which fact was known to the seller, but concealed from the buyer.

Union Motors admitted the sale of a demonstrator, but alleged that the only warranty was the usual manufacturer's warranty which was delivered to Phillips. Secondly, they assert that Phillips acknowledged in writing that no other warranties were involved. A jury was waived, and trial before the Court resulted in a compensatory award to Phillips for $650.00.

The first and principal issue to be determined is whether this is an action in contract or in tort. There are other issues, but the answer to this one is a predicate to their determination.

When fraud is relied upon, it must be distinctly pleaded. This rule requires at least "a clear statement of facts and circumstances which unexplained, would carry the conviction of fraud; in other words would be fraudulent *per se*." *Jackson* v. *Reeves*, 44 Ark. 496.

In this connection, the complaint alleges that Union Motors' agents represented the car to be in perfect condition and one as good as new; that after the purchase plaintiff Phillips discovered the car had been in a wreck and imperfectly repaired; that Union Motors knew at the time of sale that the car had been wrecked, which fact was concealed from Phillips; that "the wrong perpetrated upon the plaintiff" damaged him in the sum of $1,000.00; and he further prayed for punitive damages in the sum of $500.00.

In *Galion Iron Works & Mfg. Co.* v. *Otto V. Martin Const. Co.*, 176 Ark. 448, 3 S. W. 2d 310 (1928), the pur-

chaser pleaded fraud. He alleged that Galion's agents represented the equipment purchased "was in first class operating condition and as good as new, with the exception of certain parts, which had been stolen, and which said defendant [Galion] was to replace"; that when the equipment arrived "it was found to be old, dilapidated, and wholly worthless for the purposes for which plaintiff intended to use the same and for the purposes which the defendant . . . knew the plaintiff intended to use it, . . ."

Our Court there held that the suit was brought on the theory of false representations inducing the contract, consequently the purchaser, Martin, was permitted to introduce parol evidence in the face of a written contract which in substance recited it to be the entire understanding between the parties.

Appellee Phillips made a stronger charge of fraud than was alleged in the Galion case.

In *Gentry* v. *Little Rock Road Machinery*, 232 Ark. 580, 339 S. W. 2d 101 (1960), Gentry purchased a second-hand tractor under a sales contract. The Trial Court found the salesman assured Gentry that the tractor was in A-1 condition, but efforts by the seller to repair it were unavailing. The seller relied on the contractual disclaimer of all warranties. The Court said: "A representation that a used truck was in A-1 condition has been held to be a statement of fact and hence a warranty rather than a mere expression of opinion. *Maurice* v. *Chaffin*, 219 Ark. 273, 241 S. W. 2d 257. By the same reasoning such a representation when falsely made, gives rise to a cause of action in tort. *Fausett & Co.* v. *Bullard*, 217 Ark. 176, 229 S. W. 2d 490."

Phillips testified that Don Gregg, salesman for Union Motors, told Phillips that Union had some outstanding buys in demonstrators. Phillips indicated his interest in a demonstrator, "but I said I want a low mileage and good clean one and one that hadn't been in any

trouble, here is what the boy told me, he said Union Motor Company if they have got a demonstrator been [in] any trouble they don't sell that to a customer, they wholesale that automobile, I said if you can find one I want fine and dandy and I will do my best to trade with you.''

A few days later, Gregg brought out the demonstrator Phillips purchased and said, ''Mr. Phillips, here is a little dumpling they have given to me as my demonstrator and it is a nice little car.'' He said it had been ''handled with kid gloves.'' The sale was then and there consummated.

The next day Phillips took the car to Union Motors to have the front end aligned. From there he drove home, and when he got out of the car the door, instead of closing properly, ''hung shut.'' Upon inspection, he found the door was held shut by binding against the frame. Then he found where the left rear quarter panel had been replaced; and by measuring and comparing both sides of the car, he found they did not conform, this being difficult to detect except by comparing one side with the other. The car had been completely repainted.

When Gregg delivered the car to him, Phillips did not drive it. He relied on Gregg's representation that it was a demonstrator with 2,000 miles on it; that it was like a brand new one; and that it had been ''handled with kid gloves.''

The testimony of Lesley Caldwell, sales manager for Union Motors, developed the fact that the car did not come to them from the factory; it came to them from Union Blytheville, Inc., a related company; it was brought down as a wrecked automobile ''for the purpose of having it repaired . . .''; and after the repairs it was put on the sales lot of Union Motors.

It was further developed that Joe Vandiver, who

participated in the sale to Phillips, knew the car had been in a wreck, but did not so advise Phillips. The shop foreman testified that the left rear quarter panel was repaired. It was not disputed that the entire car had been repainted.

Union Motors' salesman, Don Gregg, who was alleged to have made the original contract with Phillips and gave the latter the assurance that Union would not sell at retail any demonstrator which had been in any trouble, did not testify. His alleged employment and agency were not disputed.

The evidence recited is certainly sufficient to show justification for the finding that the car had been substantially damaged; that this fact was known by the salesmen, Gregg and Vandiver; that Phillips accepted Gregg's assurance that he would deliver a demonstrator that had not been so involved; and that Phillips relied on these representations in purchasing the car.

Union Motors' contention that no damage resulted to Phillips is without merit. It is true Union offered testimony to the effect that in its repaired condition the car was like new. One car dealer who heard the car described testified that with the damages sustained, the car would ordinarily sell for about 25% less than a similar car which had not been involved in a wreck. Another witness testified that in its damaged condition it would be worth $1,500.00 to $1,600.00. The cash price on the invoice was $2,650.00. Upon discovering the condition of the car, Phillips offered to return it and purchase a new car, but Union Motors refused. Phillips could not be refunded his purchase price because at least one of his two "trade-ins" had been sold. In this suit Phillips was asking compensatory damages based on the difference in the market value of the car, as warranted, and its value as a wrecked car. This measure of damages is proper. Ark. Stat. Ann. § 85-2-714 (Add. 1961)

Affirmed.