D.R. "Buddy" WALLIS *v.*
FORD MOTOR COMPANY

04-506                                          208 S.W.3d 153

Supreme Court of Arkansas
Opinion delivered May 12, 2005

*Turner & Associates,* by: *Tab Turner,* and *Thrash Law Firm,* by: *Thomas P. Thrash,* for appellant.

*Wright, Lindsey & Jennings, LLP,* by: *Edwin L. Lowther, Jr.,* and *Troy A. Price; O'Melreny & Myers, LLP,* by: *Stephan J. Harburg* and *Katherine H. Wang (of counsel,* Washington, D.C.), for appellee.

ANNABELLE CLINTON IMBER, Justice. The instant appeal involves an issue of first impression. This court is asked to determine whether the circuit court erred in dismissing a class-action fraud and statutory deceptive trade practices lawsuit arising out of the purchase or lease of an allegedly defective vehicle where the only injury complained of is a diminution in value of the vehicle. We hold that the complaint was properly dismissed by the circuit court.

Appellant D.R. "Buddy" Wallis filed a class-action lawsuit against Appellee Ford Motor Company ("Ford") for common-law fraud and deceptive trade practices under the Arkansas Deceptive Trade Practices Act (ADTPA), codified at Ark. Code Ann. §§ 4-88-101 *et seq.* (Repl. 2001).[1] In his complaint, Wallis seeks to certify a class consisting of "all persons and entities in the State of Arkansas who now own or lease, or owned or leased, model year 1991 through 2001 Ford Explorer sport utility vehicles ("Explorers") purchased or leased in the State of Arkansas." Specifically, he asserts Ford knowingly concealed the fact that the Explorer had a dangerous design defect that caused it to roll over under normal operations. Wallis also alleges in the complaint that,

> [Ford's] cover up of the inherent design problems and resulting accidents, combined with its Explorer brand imaging, led millions of consumers to purchase or lease Ford Explorers at prices far in excess of the values which would have been assigned to such vehicles had these dangers been disclosed. Furthermore, thousands of Arkansas residents still own or lease Explorers, which are of substantially diminished value solely as a result of Ford's fraudulent and deceptive scheme.

Wallis does not allege any personal injury or property damage caused by the design defect, nor does he allege that the Explorer malfunctioned in any way. Instead, his entire damage claim rests on the assertion that the design defect "substantially diminished" the value of the Explorer.

Ford filed a motion to dismiss under Ark. R. Civ. P. 12(b)(6) for failure to state a claim. The circuit court granted the motion and in its order ruled that Wallis failed to "state a legally cognizable cause of action. Because the court finds that [Wallis] has not experienced a cognizable injury or damages as a result of the alleged defect, he has no cause of action." From that order, Wallis now appeals.

The case has been certified to us by the Arkansas Court of Appeals pursuant to Ark. Sup. Ct. R. 1-2(b)(1), (4), and (6) as a case involving issues of first impression, an issue of significant public interest, and substantial questions of law concerning the

---

[1] Barbara Smith and Eric Smith were also named plaintiffs in the lawsuit, but their claims have been voluntarily dismissed.

interpretation of an act of the General Assembly. In reviewing the circuit court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the party who filed the complaint. *Travelers Casualty & Surety Co. of America v. Ark. State Highway Comm'n.*, 353 Ark. 721, 120 S.W.3d 50 (2003).

The sum and substance of Wallis's argument on appeal is that no case law requires an "injury which fraud plaintiffs must suffer other than the benefit of the bargain-style losses Appellant seeks." He therefore seeks reversal of the circuit court's order, contending that a cognizable injury under a fraud or ADTPA claim can be based solely on a product's diminution in value. We disagree and affirm.

## I. Common-Law Fraud

It is a well-settled principle under our case law that damages are an essential element of fraud, and there must be an allegation of sufficient facts to satisfy the damage element or the case is subject to a motion to dismiss. *Tyson Foods, Inc. v. Davis,* 347 Ark. 566, 66 S.W.3d 568 (2002); *see also Grendell v. Kiehl,* 291 Ark. 228, 723 S.W.2d 830 (1987). Wallis, however, contends that under our case law such damages are calculable without a manifestation of the product defect. As support for that position, he relies on our decision in *Smith v. Walt Bennett Ford, Inc.,* 314 Ark. 591, 864 S.W.2d 817 (1993). In *Smith v. Walt Bennett Ford, Inc., supra,* we noted that this court has applied two measures of damages for common-law fraud: (1) the benefit-of-the-bargain measure (the difference in value of the property as represented and the property's actual value at the time of the purchase) and (2) the out-of-pocket measure (the difference between the price paid for the property and the property's actual value when received).[2]

Our application of benefit-of-the-bargain damages in common-law fraud cases has nonetheless been limited to instances where the actual product received by the purchaser manifests that it is different from that which was promised. For instance, in *Currier v. Spencer,* 299 Ark. 182, 772 S.W.2d 309 (1989), Currier,

---

[2] While both of these measures are characterized as affirmance remedies because they are awarded when the contract is affirmed, Smith elected the disaffirmance remedy of restitution when he returned the vehicle to the seller. *Smith v. Walt Bennett Ford, Inc.,* 314 Ark. at 607, 864 S.W.2d at 826.

a car dealer, placed an advertisement to sell a one-owner 1984 Datsun 300 ZX. Spencer responded to the advertisement and purchased the car for $8,250, with $5,000 paid in cash and the other $3,250 paid by check. Before the check cleared, Spencer experienced problems with his car and discovered the car had been wrecked and consisted of two cars welded together. He stopped payment on the check, whereupon Currier filed a lawsuit in contract to recover the unpaid balance due under the purchase agreement. Spencer responded by filing a counterclaim that included claims for misrepresentation, and breach of express and implied warranties. The trial court dismissed Currier's contract claim but awarded damages of $1,500 on Spencer's breach of warranty and misrepresentation claims. That amount represented the difference between the purchase price of the car, $8,250, and its actual value, $6,750. On appeal, we affirmed the award and said, "the standard measure of damages for either breach of warranty or misrepresentation is the difference in value between the product as warranted and its actual value." Likewise, in *Moore Ford Co. v. Smith*, 270 Ark. 340, 604 S.W.2d 943 (1980), another misrepresentation action, the appellee brought suit when she discovered that her "new car" had prior body work done on the hood and fender. The jury awarded her $1,250 in compensatory damages, and we affirmed.

Similarly, in *Union Motors v. Phillips*, 241 Ark. 857, 410 S.W.2d 747 (1967), the plaintiff brought suit for fraud, claiming that his car, prior to purchase, was represented to him as a new car with low mileage. In that case we said,

> Union Motors' contention that no damage resulted to Phillips is without merit. It is true Union offered testimony to the effect that in its repaired condition the car was like new. . . . In this suit Phillips was asking compensatory damages based on the difference in the market value of the car, as warranted, and its value as a wrecked car. This measure of damages is proper.

*Id.* at 861, 410 S.W.2d at 749. In *Greiner Motor Co. v. Sumpter*, 344 Ark. 736, 427 S.W.2d 8 (1968), also a misrepresentation case, we affirmed a jury's award of $1,497 in damages. In that case, Sumpter and his wife believed they were buying a new car. Upon discovering that it was not new, they decided to keep the car and bring an action for misrepresentation. The damages formula submitted to the jury was the difference between the market value of the car as warranted and its market value in its condition at the time of the sale, and we affirmed.

In sum, the principle undergirding our case law is that benefit-of-the-bargain damages are only awarded in fraud cases where a party proves that the product received is not what was bargained for; that is, the product received in fact manifests that it is different from that which was promised.

Several other jurisdictions have addressed what type of damages must be alleged in order for a plaintiff to successfully bring a common-law fraud claim for allegedly defective products. In *Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999), the plaintiffs brought a class-action fraud lawsuit based on an allegedly defective anti-lock brake system (ABS) in vehicles manufactured by General Motors. As in this case, the plaintiffs did not allege that the brake system had ever malfunctioned or failed. The Eighth Circuit Court of Appeals held that "[t]he Plaintiff's conclusory assertions that they, as a class, have experienced damages . . . are simply too speculative to allow this case to go forward. The Plaintiffs' assertions that their ABS-equipped vehicles are defective and that they have suffered a loss in resale value as a result of the defect is insufficient as a matter of law to plead a claim under any theory the plaintiffs have advanced." *Id.* at 629.

More recently, the Wisconsin Supreme Court has held that the mere "propensity" for premature product failure is not enough to constitute cognizable damages. *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 677 N.W.2d 233 (2004). In *Tietsworth*, a class-action lawsuit was filed on behalf of certain Harley-Davidson motorcycle owners seeking damages for an alleged defect in the motorcycles' engines. In the original complaint, the plaintiffs pleaded claims based on negligence, strict products liability, fraud, and deceptive trade practices. Once again, as in this case, the plaintiffs did not allege any personal injury or property damage arising out of the engine defect; nor did they allege that the motorcycle engines had actually failed or malfunctioned in any way. Rather, they alleged that their motorcycles were diminished in value because the defect created a "propensity" for premature engine failure. The trial court dismissed the entire action for failure to state a claim. The plaintiffs appealed only the dismissal of their claims for common-law fraud and statutory deceptive practices. While both claims were initially reinstated by the Wisconsin Court of Appeals in *Tietsworth v. Harley-Davidson, Inc.*, 261 Wis. 2d 755, 661 N.W.2d 450 (2003), the Wisconsin Supreme Court reversed that decision, concluding that "an allegation that a product is diminished in value because the product line has demonstrated a

propensity for premature failure such that the product might or will at some point in the future fail prematurely is too uncertain and speculative to constitute a legally cognizable tort injury and is therefore insufficient to state damages in a tort claim for fraud." *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d at 160, 677 N.W.2d 233 at 240. Because the injury complained of in *Tietsworth v. Harley-Davidson, Inc.*, *supra*, was only a diminution in value, the court refused to allow the mere possibility of future product failure to support a fraud claim.

Moreover, in so holding, the Wisconsin Supreme Court relied upon cases from other jurisdictions that have affirmed the dismissal of fraud claims where the allegedly defective product has not actually malfunctioned. *Id.* at 160-61 (citing *Briehl v. General Motors Corp.*, 172 F.3d 623, 627-29 (8th Cir. 1999) (affirming dismissal of class-action lawsuit for fraud and breach of warranty where the only damage claimed from allegedly defective anti-lock brake system was overpayment and diminished resale value); *Jarman v. United Industries Corp.*, F. Supp. 2d 757, 767 (S.D. Miss. 2000) (dismissing fraud, warranty, and various statutory claims for purchase of allegedly ineffective pesticide where there is no allegation of actual product failure); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99-100 (S.D.N.Y. 1997) (dismissing class-action fraud and warranty lawsuit for allegedly defective integrated child seats where there is no allegation that the product has malfunctioned or the defect manifested itself); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657-58 (D.N.J. 1986) (dismissing fraud and warranty claims for alleged engine defect where engine has not malfunctioned and plaintiff alleges diminished value only); *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 559-65 (N.D. 2002) (dismissing class-action fraud and negligence lawsuit for alleged brake system defect where damages were premised only on diminution in value); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 741 N.Y.S.2d 9, 17 (N.Y. App. Div. 2002) (dismissing class-action fraud, negligence, and products-liability lawsuit for allegedly defective seat backrest in the absence of allegation of actual product failure); *Yu v. Int'l Bus. Mach. Corp.*, 314 Ill. App. 3d 892, 247 Ill. Dec. 841, 732 N.E.2d 1173, 1177-78 (2000) (affirming dismissal of class-action fraud, negligence, and deceptive-trade-practices lawsuit for allegedly defective computer software where there was no allegation of actual product failure); *Ford Motor Co. v. Rice*, 726 So.2d 626, 631 (Ala.1998) (affirming dismissal of class-action fraud

lawsuit for SUV design defect alleged to cause a "rollover" tendency where defect did not manifest itself and vehicles did not roll over.)

Notwithstanding the above-cited authority to the contrary, Wallis suggests that the decision by the Fifth Circuit Court of Appeals in *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001), supports his position that damages are cognizable where there is a propensity for a product to fail prematurely as a result of an alleged defect. In the *Coghlan* case, the Coghlans bought a fishing boat that they believed to be "all-fiberglass." A few months after purchase, they discovered that the boat was not in fact "all fiberglass" as represented; instead, it was composed of 1.5 inches of plywood. The Coghlans filed a class-action lawsuit asserting violations of the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312, breach of implied warranty of fitness for a particular purpose, state law claims for fraud, negligent misrepresentation, breach of contract, deceptive trade practices, unjust enrichment, and civil conspiracy. Wellcraft moved to dismiss all of the claims asserted in the complaint. In granting Wellcraft's motion, the federal district court independently analyzed the pleadings and concluded that the Coghlans had failed to allege any real damages. On appeal, the Fifth Circuit ruled that as to several of the claims, including the fraud claim, the Coghlans had asserted a cognizable injury in the complaint even though the only damage sought was the "benefit of their bargain with Wellcraft, or the difference in value between what they were promised, an all fiberglass boat, and what they received, a hybrid wood-fiberglass boat." *Coghlan*, 240 F.3d at 452. In citing the *Coghlan* case, Wallis fails to mention that the Fifth Circuit specifically explained the distinction between claims rooted in basic contract law, such as the Coghlans' claims, and claims rooted in the law of product liability, such as the claims at issue in this case:

> The key distinction between this case and a "no-injury" product liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability: the Coghlans assert they were promised one thing but were given a different, less valuable thing. The core allegation in a no-injury product liability class action is essentially the same as in a traditional products liability case: the defendant produced or sold a defective product and/or failed to warn of the product's dangers. The wrongful act in a no-injury products suit is thus the placing of a dangerous/defective product in the stream of commerce. In contrast, the wrongful act

alleged by the Coghlans is Wellcraft's failure to uphold its end of their bargain and to deliver what was promised. The striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss. Here, the damages sought by the Coghlans are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain. It is worth noting that the no-injury approach to product litigation has been rejected in several recent decisions. *See, e.g. Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir.1999); *Ford Motor Co. v. Rice*, 726 So. 2d 626 (Ala.1998).

*Id.* at 455 n.4.

In view of the above-quoted analysis by the Fifth Circuit, it is clear that the *Coghlan* case ultimately supports our conclusion. In a no-injury products liability case, it is the wrongful act of placing a dangerous or defective product in the stream of commerce that creates the cause of action; whereas, in a misrepresentation or a fraud case, such as *Coghlan,* the cause of action rests solely on the premise that a party *did not* receive the benefit of his or her bargain. In order to prove the later claim, a party must show that the product delivered was not in fact what was promised. For example, the Coghlans bargained for an "all fiberglass" boat; instead, they received a boat with 1.5 inches of plywood. In this respect, Wallis attempts to merge two separate causes of action: he seeks to recover benefit-of-the-bargain damages for the wrongful act of placing an allegedly defective product in the stream of commerce. Yet, the *Coghlan* case clearly states that such damages are not rooted in the alleged defect of the product, but in the fact that the purchaser has not received the benefit of his or her bargain; that is, the product delivered in fact manifests that it is different from that which was promised. Here, there is no allegation in the complaint that the Ford Explorer has not, to date, been exactly what Wallis bargained for; that is, he does not allege that the vehicle has actually malfunctioned or that the defect has manifested itself.

Moreover, numerous other jurisdictions have refused to award benefit-of-the-bargain damages when there is no allegation that the product received was not the bargained-for product. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002); *In re General Motors Corp. Anti-Lock Brake Products Liability Litigation*, 966

F. Supp. 1525 (E.D. Mo. 1997); *Lee v. General Motors Corp.*, 950 F. Supp. 170 (S.D. Miss. 1996); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449 (1996); *American Suzuki Motor Corp. v. Carney*, 37 Cal. App. 4th 1291, 44 Cal. Rptr. 2d 526 (1995); *Walus v. Pfizer, Inc.*, 812 F.Supp. 41 (1993); *Angus v. Shiley*, Inc., 989 F.2d 142 (3rd Cir. 1993); *Spuhl v. Shiley, Inc.*, 795 S.W.2d 573 (Mo. Ct. App. 1990); and *Johnson v. General Motors*, 349 Pa. Super. 147, 502 A.2d 1317 (1986).

██   Despite the fact that some jurisdictions have concluded that the "diminution in value" of a product alone is enough to succeed on a common-law fraud claim, *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 762 N.E.2d 1 (2001); *Khan v. Shiley Inc.*, 217 Cal. App. 3d 828 (1990), we decline to adopt this principle. According to our well-settled case law, common-law fraud claims not resulting in injury are not actionable. *Irons v. Reyburn,* 11 Ark. 378, 389 (1850) (holding that in equity as well as at law fraud and injury must concur to furnish ground for judicial action); *Harris v. Byers*, 210 Ark. 695, 197 S.W.2d 730 (1946) (holding that false or fraudulent representations not resulting in injury are not actionable). Accordingly, we hold that Wallis's common-law fraud claim for an allegedly defective vehicle is insufficient to survive a Rule 12(b)(6) motion to dismiss where the only injury alleged is a diminution in value of the vehicle.[3]

## II. *Arkansas Deceptive Trade Practices Act*

In addition to the common-law fraud claim, Wallis contends that he has a "legal right to receive benefit of the bargain damages for fraudulent representations made in the sale of a Ford Explorer" under the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. §§ 4-88-101 *et seq*. Specifically, Wallis bases his claim on Ark. Code Ann. § 4-88-107 (Repl. 2001). Among other things, Ark. Code Ann. § 4-88-107 prohibits "[k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services. . . ." and prohibits "[a]dvertising the goods or services with the intent not to sell them as advertised. . . ." Ark. Code Ann. § 4-88-107(a)(1) & (3) (Repl. 2001).

---

[3] We note that Wallis did not pursue remedies available under the Uniform Commercial Code. *See* Ark. Code Ann. §§ 4-2-101 *et seq*. (Repl. 2001).

The methods by which the provisions of the ADTPA may be enforced are set forth in Ark. Code Ann. § 4-88-113 (Repl. 2001). That section states:

> (a) In any proceeding brought by the Attorney General for civil enforcement of the provisions of this chapter, prohibiting unlawful practices as defined in this chapter, the circuit court may make such orders or judgments as may be necessary to:
>
> (1) Prevent the use or employment by such person of any prohibited practices;
>
> (2)(A) Restore to any purchaser who has suffered any ascertainable loss by reason of the use or employment of the prohibited practices any moneys or real or personal property which may have been acquired by means of any practice declared to be unlawful by this chapter, together with other damages sustained.
>
> (B) In determining the amount of restitution to be awarded under this section, the court shall consider affidavits from nontestifying purchasers, provided that:
>
> (i) The affidavits are offered as evidence of a material fact;
>
> (ii) The affidavits are more probative on the point for which they are offered than any other evidence which the Attorney General can procure through reasonable efforts;
>
> (iii) The interests of justice will be best served by admission of the affidavits; and
>
> (iv) The Attorney General makes the names and addresses of the affiants available to the adverse party sufficiently in advance to provide the adverse party with a fair opportunity to communicate with them; and
>
> (3) Assess penalties to be paid to the state, not to exceed ten thousand dollars ($10,000) per violation, against persons found to have violated this chapter.
>
> (b) Upon petition of the Attorney General, the court may order the suspension or forfeiture of franchises, corporate charters, or other licenses or permits or authorization to do business in this state.

(c) Any person who violates the terms of an injunction issued under this chapter shall forfeit and pay to the state a civil penalty of not more than ten thousand dollars ($10,000) for any single action brought by the Attorney General.

(d)(1) Every person who directly or indirectly controls another person who is in violation of or liable under this chapter and every partner, officer, or director of another person who is in violation of or liable under this chapter shall be jointly and severally liable for any penalties assessed and any monetary judgments awarded in any proceeding for civil enforcement of the provisions of this chapter, provided that the persons to be held jointly and severally liable knew or reasonably should have known of the existence of the facts by reason of which the violation or liability exists.

(2) There is contribution as in cases of contract among the several persons so liable.

(3) Every person subject to liability under subdivision (d)(1) of this section shall be deemed, as a matter of law, to have purposefully availed himself or herself of the privileges of conducting activities within Arkansas sufficient to subject the person to the personal jurisdiction of the circuit court hearing an action brought pursuant to this chapter.

(e) As compensation for his services under this chapter, the Attorney General shall be entitled to all expenses reasonably incurred in the investigation and prosecution of suits, including, but not limited to, expenses for expert witnesses, to be paid by the defendant when judgment is rendered for the state, and, in addition, shall recover attorney's fees and costs.

(f) Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees.

Ark. Code Ann. § 4-88-113 (Repl. 2001). As indicated in the plain language of the statute, the responsibility for civil enforcement of the ADTPA rests largely with the Attorney General. Ark. Code Ann. § 4-88-113(a)–(e). Under section 4-88-113(a)(2), the Attorney General may institute a proceeding to restore moneys or real or personal property to any purchaser who has suffered any "ascertain-

able loss" as a result of the use or employment of practices declared to be unlawful under the ADTPA. In contrast, under subsection (f) of section 4-88-113, a private cause of action is limited to instances where a person has suffered "*actual damage or injury* as a result of an offense or violation as defined in this chapter." Ark. Code Ann. § 4-88-113(f) (Repl. 2001) (emphasis added). Pursuant to section 4-88-113(f), a person may only recover his or her actual damages and reasonable attorney's fees. Ark. Code Ann. § 4-88-113(f).

■ Under section 4-88-113, the legislature has designated two different types of damages that are recoverable under the ADTPA. First, in order to protect consumers, the Attorney General has been given the power to bring actions to recover any "ascertainable loss" sustained by purchasers. Ark. Code Ann. § 4-88-113 (a) – (e). Second, under Ark. Code Ann. § 4-88-113(f), a private cause of action is afforded to any person who suffers actual damage or injury. As we stated in connection with common-law fraud claims arising out of the purchase of an allegedly defective product, actual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself. Where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA.

While state consumer-protection statutes do vary from state to state, other jurisdictions have also rejected any attempt to pursue remedies under their respective deceptive trade practices acts where the complaint has failed to allege actual injury or damages. *Tietsworth v. Harley-Davidson, Inc., supra; Frank v. DaimlerChrysler Corp., supra; Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002); *Ziegelmann v. DaimlerChrysler Corp., supra; Yu v. Int'l Bus. Mach. Corp., supra; Briehl v. General Motors Corp., supra; Martin v. Ford Motor Co., supra.* Furthermore, other jurisdictions that have allowed such claims to survive a motion to dismiss have done so because their deceptive trade practices statutes, unlike our statute, allow a private cause of action to recover any "ascertainable loss." *Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547, 823 A.2d 888 (2001); *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 440 A.2d 810 (1981). Once again, the ADTPA only allows a private cause of action to recover "actual damage or injury." Ark. Code Ann. § 4-88-113(f). We therefore conclude that Wallis does not state a cognizable cause of action under the ADTPA where the only injury complained of is a diminution in value of the vehicle.

For the foregoing reasons, we affirm the circuit court's decision to dismiss Wallis's class-action complaint under Ark. R. Civ. P. 12(b)(6). The claims for common-law fraud and deceptive trade practices under the ADTPA are deficient because Wallis has failed to plead a cognizable injury as a result of the purchase or lease of an allegedly defective vehicle.

Affirmed.