TURNER-McCOY, INC. v. HARDY.

5-1844                                                323 S. W. 2d 562

Opinion delivered April 20, 1959.

[Rehearing denied May 25, 1959]

411

*Mehaffy, Smith & Williams, Herschel H. Friday, Jr.* and *William L. Terry,* for appellant.

*Frank J. Wills,* for appellee.

J. SEABORN HOLT, Associate Justice. Hardy and Company, Inc., owned a tract of land in Pulaski County. This company proposed to build, furnish and equip a complete plant on this property for the manufacture of hardboard building materials and the money for this purpose, in the amount of $850,000.00, was furnished by appellee, Mrs. Hardy. The building and equipment were substantially completed on October 5, 1956, and October 10, 1956 was designated by the architect as the date of acceptance. On January 7, 1957, Hardy and Company, Inc., executed a mortgage in favor of Mrs. Hardy securing the sum of $850,000.00 to be used in the manner designated in the mortgage. This mortgage was recorded January 9, 1957. As of January 7, 1957, it appears that $677,000.00 had already been advanced by Mrs. Hardy and used as directed; thus, it appears that this mortgage was not filed for record until the work for which the money was borrowed was substantially complete. On January 4, 1957, four days before the recording of said mortgage, appellant, Turner-McCoy, Inc., entered into a contract with Hardy and Company, Inc., ''to furnish labor and materials necessary to fabricate and install certain piping and erect or install certain equipment as you may direct in your hardboard plant''. On April 15, 1957, appellant submitted its bill for $9,449.17 for such labor, materials and profit. It appears that the plant began the manufacture of hardboard about March 20, 1957. The above is the only bill sent to Hardy and Company, Inc., by appellant until July 30, 1957 when it billed Hardy and Company, Inc., as follows: ''For labor required to perform the following work:

(1) Put into operation and adjust boiler
feed water pumps & Copes Feed water
regulator

June 17, 1957   $30.63

(2) Lower Copes feed water
regulator generator

May 17, 1957   10.17
_____

$40.80

Above at the request of your Mr. Travis McCoy''.

Thereafter, on August 8, 1957, appellant filed the present suit seeking a mechanic's and materialman's lien (Secs. 51-601, 51,604, Ark. Stats. 1947) for $9,489.97,—the amount of the April 15th bill plus the July bill of $40.80, or a total of $9,489.97. Under a second mortgage filed for record July 8, 1957, Mrs. Hardy had loaned Hardy and Company, Inc., additional funds totaling $205,762.39. The debts secured by both mortgages were due on or before December 31, 1957. Mrs. Hardy filed a cross-complaint seeking foreclosure of her mortgages, default having been made.

A trial resulted in a decree granting appellant (Turner-McCoy, Inc.,) a lien for $9,489.97 inferior to Mrs. Hardy's first mortgage, but superior to her second mortgage above, and directed sale of the property for application of said liens. Appellant has appealed, asserting that its lien should be declared superior to appellee's mortgage and appellee has cross-appealed, challenging appellant's right to any lien.

Appellant says: ''The sole question presented by appellant's appeal is a determination of the priority between the lien of appellee's mortgage and the statutory mechanic's and materialman's lien of appellant, there being little or no dispute as to the facts involved in a determination of the issue raised by appellant's appeal''. It relies on the following points:

''1. Appellant's statutory mechanic's and materialman's lien relates back to the beginning of the construction of the plant, and is accordingly prior to that of appellee's mortgage.

2. As between the lien of appellee's mortgage and the statutory mechanic's and materialman's lien of appellant, the latter became effective as of the date appellant's contract was entered into with the owner, Hardy and Company, Inc., which date was prior to the date of recording of the mortgage''.

## I

We do not agree with appellant's first contention. The record here reflects that appellant completed its work of installing the machinery under its contract of January 4, 1957 above, on March 14, 1957, and that the plant began operation soon thereafter. No lien notice was filed and no suit begun within 90 days from March 14, 1957. The contract for the plant building had been fully performed more than three months before appellant began its work. It further appears that appellant, at Hardy and Company's request, did on May 17, 1957, the following work: ''Lower Copes feed water regulator generator'', and on June 17, 1957, ''put into operation and adjust boiler feed water pumps & Copes Feed water regulator'', charging for the May work, $10.17 and for the June work, $30.63, or a total of $40.80. This work, we think, amounted to nothing more than servicing machinery and fixtures already installed in the plant, in effect, corrective work, and we hold, in the circumstances, did not extend the lien period. The text writer in 143 A. L. R. 1190 announced the rule in this language: ''With few exceptions, it has been held, in the cases considering the question, that after the installation of fixtures, machinery, or attachments in a building, services in the form of, or repairs to, such fixtures, machinery, or attachments, performed by the seller, or the one making the installation, should not be regarded as a part of the act of sale or installation, so as to make the time within which to file a mechanic's lien based on such original act run from the time of performance of such additional services''. In order that an item may constitute a lien, it must have been furnished under one continuing contract, *Ferguson Lumber Co.* v. *Scriber,* 162 Ark. 349, 258 S. W. 353.

In view of our conclusion that the appellant failed to perfect its lien within ninety days after the completion of the work on March 14, it becomes unnecessary to consider the other arguments made in the appellant's brief. Since the appellant is not entitled to a lien on the property it follows, of course, that both of the appellee's mortgages are entitled to priority. The decree is accordingly affirmed on direct appeal and reversed on cross-appeal, and the cause remanded for further proceedings.

Justice ROBINSON not participating.