ARKANSAS LOUISIANA GAS COMPANY v.
RALPH A. MOFFITT, ET AL

5-4719                                                    436 S.W. 2d 91

Opinion Delivered January 20, 1969

*Charles W. Baker* for appellant.

*Murphy & Arnold* by *H. David Blair* for appellees.

J. Fred Jones, Justice. This is a materialmen's lien case presented to this court on appeal by the Arkansas Louisiana Gas Company from a decree of the Cleburne County Chancery Court denying a lien on real property belonging to appellees, Ralph and Gladys Moffitt.

The record reveals the following facts: In early 1966, John E. Bryant and Sons Lumber Company, Inc. contracted with appellees, Ralph A. and Gladys L. Moffitt, to build an air conditioned motel for the Moffitts near Heber Springs, Arkansas. Bryant subcontracted the electrical and plumbing work, which included the air conditioning portion of the original contract, to appellee Hayden. On March 10, 1966, Hayden purchased from the appellant air conditioning equipment for installation in the motel. As a general policy, in the sale of its air conditioning equipment, the appellant furnished sup-

ervision and advice on installation without additional cost to contractors and other purchasers of equipment. The equipment sold to Hayden was delivered on June 3 and installed by Hayden. Appellant supervised and instructed Hayden in how to wire thermostats on the equipment and in connection with other items during the period of installation. The motel was open for business on July 1, 1966, and the air conditioning equipment was in operation on that date. On July 6, 1966, the equipment which controlled the regularity with which the blowers came on was recalibrated under the supervision of appellant. Hayden failed to pay the appellant for the equipment and on November 3, 1966, appellant filed a lien account claiming a materialmen's lien against the motel property. The question presented to the chancellor was whether appellant's lien account was timely filed. The chancellor held that it was not and the appellant relies on the following point for reversal:

"The chancellor's finding that Appellant is not entitled to a lien is against the preponderance of the evidence and should be reversed."

Memorandum of the transaction between the appellant and Hayden was evidenced by two instruments dated March 10, 1966. One, a purchase order No. 5 was signed by Horace Hayden, and the other, designated in writing, "memo contract" was on a printed security agreement form and was signed by E. O. Allen, sales representative for the appellant. The purchase order No. 5 appears in the record as follows:

"Ref Ralph Moffitt

Motel Heber Springs
Ark—Job #2402

Please go ahead with order for Equip on above job.

Thanks
Horace Hayden

```
            2477.00
+ Tax         69.91
          _____
          $ 2546.81"
```

The memo contract on the security agreement form appears as follows:

"                    Memo  Contract
                    Security  Agreement

The Arkansas Louisiana Gas Company agrees to sell and the undersigned purchaser agrees to buy the following described property:

1—RE 42-96, AYS—105, w/PK-WM,

1—Model 428, AYS-86 & PK-86 & T'stat

1—Lot Chiller Controls

```
6—Lots  Coil  Controls        2327.00
                       Tax       69.81
              Freight & Del.    150.00
                            _____
                               2546.81
```

Two Cabildo Gaslites & 2 yrs. service free
\*    \*    \*

Property purchased will be installed at Moffitt Motel—Heber Springs. Property will remain in possession of purchaser at the address in installation until the entire purchase price is paid.

No verbal agreements or warranties have been made by the parties hereto relative to this sale, it being

understood that this written contract, including the conditions printed on the back hereof, embodies the entire agreement."

The lien account, exhibit #2, bears no filing date and the record does not reveal where or when the lien account was filed, but it appears agreed that the original records revealed the filing date to be November 3, 1966. The place of filing and sufficiency of the lien account are not questioned. The lien account was dated October 27, 1966, and contained language as follows:

"That said Arkansas Louisiana Gas Company sold and delivered to Hayden's Plumbing & Electric Service, beginning March 25, 1966, and continuing through July 6, 1966, under a single contract and continuous account, air conditioning equipment and materials for construction of buildings and improvements on [description] for an agreed price and sum and having a value of Two Thousand Five Hundred Forty-Six Dollars and Eighty-one cents ($2,546.81), after allowing all credits thereon;

That said air conditioning equipment and materials consisted of one RE-42-96 Servel Unit; one Model 428 Unit; one 105 AYS Tower; one 86 AYS Tower with coils, controls and necessary equipment and materials for installation; labor of installation.

That a copy of each invoice itemizing and describing said air conditioning equipment and materials was delivered to the said Hayden's Plumbing & Electric Service at the time that said equipment and materials were purchased by them and that all of said equipment and materials were furnished for and used in the construction of the said buildings and improvements located on the land described above;

That said equipment and materials were delivered to said real estate for Ralph A. Moffitt and Gladys L. Moffitt, who are the owners of the fee simple title to said real estate, a verified statement of which is attached.

That the foregoing is a just and true account of the demand due and owing to said Arkansas Louisiana Gas Company by said Hayden's Plumbing & Electric Service and that there is now justly due and owing on said account, after allowing all credits, the sum of $2,546.81 with interest thereon at 6% per annum.

That said Arkansas Louisiana Gas Company claims a lien . . .''

As a part of the lien account, filed on November 3, 1966, the appellant attached an invoice or account statement on appellant letterhead stationery, as follows:

''Invoice No. 22-1-05-02-0084-0

Job 8495
Co 72097

Date: October 17, 1966
Order No. 5

Sold To: Hayden's Plumbing & Electric Service
P. O. Box 812
Batesville, Arkansas

Installed at: Moffett [sic] Motel
Heber Springs, Arkansas

Terms: Cash on Job Completion

7-6-66   1—RE 42-96 AYS—105 w/PKWM

| | |
|---|---|
| 1—Model 428 AYS—86 & PK-86 & T'stat | |
| 1—Lot Chiller Controls | |
| 6—Lots Coil Controls | $2,327.00 |
| Freight & Delivery | 150.00 |
| 2—Years Free Service | n/c |
| 2—Cabilo Gaslites | n/c |
| Sales Tax | 69.81 |
| TOTAL | $2,548.81 |

RE 42-96 Chiller—Serial No. 600184—Rfg. 61473

428 Arkla Unit—Serial 600102—Rfg. 8152

105 AYS Tower—Serial 52781

86 AYS Tower—Serial 51876

Start up Date 7-6-66

Warranty Service Contract Expires 7-6-68

*   *   *

[Signed] W. Robert Nease
W. Robert Nease"

Mr. W. A. Harkey, district manager for the appellant, testified that the sale was according to regular procedure and was for cash 30 days after completion of the job.

Mr. Reedy, appellant's plant manager, testified concerning the advice and supervision given by appellant in connection with the installation of the equipment. According to Mr. Reedy, the air conditioning equipment was delivered on June 2, 1966. The gas meter was set on June 7, and on June 8 the outside units were set on concrete slabs. On June 13 the plumbing and wiring were checked. On June 15 the contractor was advised on how to set air handlers in the rooms and pipe the

condensate drains. On June 23 additional check was made with the electricians on the thermostat wires. On June 28 the units had been started but were not cooling properly, so the coils were refilled with water, its temperature tested, and found to be cooling to a satisfactory forty-one degrees. Mr. Reedy testified that he returned to the job on July 6 and that the installation of the equipment was finally completed on that date.

"Q. What did you do on that day?

A. I checked with the electrician and advised him how to level the thermostats and made adjustments of recalibration at that time to final completion of the job.

Q. You stated that that was the final completion of the job.

A. Yes.

Q. And it is your statement that the installation was completed on that date?

A. Yes.

Q. And that was July 6, of 1966?

A. July 6, 1966.

Q. And what is a calibration of a thermostat?

A. Well, of course, the temperature itself could be off; they could not be level; they have a mercury bulb in there that causes the fans in the fan coils to come on and go off at certain intervals; and they have to be recalibrated and leveled in order to make them function properly.

Q. After your visit out there on that day, did you then notify anyone that the job was completed?

A. Yes. Of course, Mr. Harkey, the district manager in Conway, was notified, and at that time our custom order was initialed by me and sent to him for billing.

Q. And it is at that date that the service warranty comes into effect?

A. Yes.

＊　＊　＊

Q. Mr. Reedy, if you know, when were these units first turned on and placed into operation for testing?

A. On June 7, we set the meter and, of course, the plumbers and electrician at that time were on the job and doing the necessary plumbing and wiring for the testing of this equipment at that time, and we were starting them up and getting them ready for use during that time.

Q. When did you receive a deposit on your meter?

A. I got the deposit from Mrs. Moffitt. Mrs. Ralph Moffitt, on July 1, 1966.

Q. Did you set the meter on June 2—or 7?

A. June 2.''

The recalibration on July 6, 1966, was the only act performed by Hayden in connection with the equipment within 120 days from the date the lien account was filed. Appellant contends that July 6, 1966, was the date on which the installation of the air conditioning equipment was finally completed and was the date on which its last item of supervision occurred, and that the time for fil-

ing its materialmen's lien account started running from that date. The chancellor did not agree with this contention and neither do we.

Arkansas Statute Annotated § 51-601 (1947) provides as follows:

"Every mechanic, builder, artisan, workman, laborer or other person who shall do or perform any work upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection, improvement upon land, or upon any boat or vessel of any kind, or for repairing same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions with this act, shall have for his work or labor done, or materials, fixtures, . . . furnished a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor on which the same are situated . . ."

Arkansas Statute Annotated § 51-613 (Supp. 1967) provides as follows:

"It shall be the duty of every person who wishes to avail himself of this act [§§ 51-601, 51-604 —51-626] to file with the clerk of the circuit court of the county in which the building, erection or other improvement to be charged with the lien is situated, and within one hundred and twenty (120) days after the things aforesaid shall have been furnished or the work or labor done or performed, a just and true account of the demand due or owing to him, after allowing all credits, and containing a correct description of the property to be charged with said lien, verified by affidavit."

It is readily seen that the "memo contract" simply sets out the agreement to "sell and to buy" and makes

no reference whatever to installation or supervision of installation. The appellant was a materialman under the provisions of its contract, and the material consisting of the air conditioning equipment was furnished by the appellant when it was delivered to Hayden on June 3, 1966. No work or labor was called for in the contract, no work or labor was done or performed by appellant, and appellant's voluntary supervision and advice, without additional pay and without request or demand, did not toll the time for filing the lien for the things furnished. The date on which materials are actually furnished or work or labor is actually done or performed is the date from which lien time is to be reckoned under our statute, and not the date on which the materialman considers the construction or installation job completed by the purchaser and the account due and payable.

Appellant points out that the chancellor found that appellant's supervision and advice in the proper installation of the equipment was a part of the agreement of sale in this case. Even so, the lien time of 120 days ran from the date when the materials were furnished or the work or labor done or performed, and not from the date the final installation was considered complete.

The appellant did not agree, and was not obligated to *install* the equipment it sold. It only contends that by side agreement, and general custom, it supervised the installation of the equipment it sold and was so engaged at the recalibration of the equipment on July 6, 1966. Appellant cites no case, and we have found none, in which the gratuitous time spent by the seller of equipment in advising the purchaser of the proper manner of installing it, has been held to extend the time for filing a materialmen's lien account under a statute similar to our own. Granting that supervision over the installation was a part of the contract of sale in this case, we conclude that the recalibration of the equipment on July 6 constituted no part of the installation.

In 143 A.L.R. 1190 under annotations pertaining to mechanic's lien—servicing of fixtures is found the following:

"With but few exceptions, it has been held, in the cases considering the question, that after the installation of fixtures, machinery, or attachments in a building, services in the form of examination or regulation of, or repairs to, such fixtures, machinery, or attachments, performed by the seller or the one making the installation, should not be regarded as a part of the act of sale or installation, so as to make the time within which to file a mechanic's lien based on such original act run from the time or performance of such additional services."

In the case of *Breeding* v. *Melson*, 143 Atl. 23, 60 A.L.R. 1252, a lien was filed under a contract between the parties for the furnishings of labor and superintending in the erection of a moving picture theater and for furnishing materials for the erection of the theater. The lien was filed under a statute that provided for the filing of a mechanic's lien statement "within 30 days after the expiration of 90 days from completion of the building, house or structure contracted by him and upon which he desires to secure a lien." In that case the court said:

"There is no conflict between the authorities as to proposition that the time for filing a claim in a mechanic's lien proceeding is computed from the date when the last item of work, labor or materials is done, performed or furnished, and that principle is, undoubtedly, correct. But the work performed and materials furnished must be required by the contract, and whatever is done must be done in good faith for the purpose of fully performing the obligations of such contract, and not for the mere purpose of extending the time for filing lien proceedings.

Therefore the performance of labor or the furnishing of materials of a trivial character which are not expressly provided for by such contract and after it has been substantially performed will not ordinarily extend the time for filing a mechanic's lien; this is especially true if such performance has been considered and treated by the parties as final and complete.''

The record is not perfectly clear as to the exact date the last of the equipment was delivered to the motel job site or the exact date the last part of the equipment was installed, but certainly all of the equipment had been installed and was in operation on July 1, 1966, and the chancellor's decree so finding is not against the preponderance of the evidence.

We do not question appellant's good faith in this case. We simply conclude that the recalibration of the equipment by Hayden on July 6, 1966, amounted to an adjustment of equipment already installed and hold that appellant's supervision of that operation did not extend the period for filing its materialmen's lien account beyond the date of last delivery nor for work done beyond the date of actual installation which was complete at least prior to July 1, 1966. *Turner-McCoy, Inc.* v. *Hardy*, 230 Ark. 410, 323 S.W. 2d 562.

The decree is affirmed.

FOGLEMAN, J., disqualified and not participating.