SERVEWELL PLUMBING, LLC *v.*
SUMMIT CONTRACTORS, INC.,
and The Gables of Maumelle Limited Partnership

04-1306 210 S.W.3d 101

Supreme Court of Arkansas
Opinion delivered June 16, 2005

*Rieves, Rubens & Mayton,* by: *Kent J. Rubens* and *Lawrence W. Jackson,* for appellant.

*Wright, Lindsey & Jennings, LLP,* by: *Stephen R. Lancaster* and *Colin R. Jorgensen,* for appellee Summit Contractors, Inc.

*Gill, Elrod, Ragon, Owen & Sherman, P.A.*, by: *Roger H. Fitzgibbon, Jr.*, for appellee The Gables of Maumelle Ltd. P'ship.

Tom Glaze, Justice. This case arose out of a contract dispute between Servewell Plumbing, LLC, and the general contractor and owner of a development project. The Gables of Maumelle ("the Gables"), one of the appellees in this case, was developing an apartment complex in Maumelle. Appellee Summit Contractors was the prime contractor for the job, and Summit hired Servewell as the plumbing subcontractor on the project. On February 10, 2003, Servewell filed a complaint in Pulaski County Circuit Court, alleging that Summit and the Gables had breached the contract with Servewell by refusing to pay for work done on the project. Servewell asserted that the property on which it had completed work was subject to a materialmen's lien, although Servewell had not yet perfected the lien. Servewell also alleged that the Gables had been unjustly enriched by Servewell's performance.[1]

In its answer, Summit objected to jurisdiction and venue, and moved to dismiss the complaint on the basis of a forum-selection clause in the contract designating Duval County, Florida, as the exclusive venue for any judicial proceedings. The Gables later filed an amended answer incorporating a motion to dismiss on the pleadings, asserting that Servewell's lien was untimely and void.

On June 12, 2003, while still disputing the validity of the lien, Summit posted a Labor and Material Payment Bond with the Pulaski County Circuit Court in the amount of $5,847,000, well over twice the amount Servewell's complaint sought. Later in June, Summit filed a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(3), contending that the forum-selection clause rendered venue improper in the Pulaski County Circuit Court. Servewell responded, arguing that the forum-selection clause was unenforceable under either Florida or Arkansas law.

On July 11, 2003, Summit filed a motion seeking to dismiss the Gables from the suit, arguing that Servewell's alleged lien was filed outside of the statutory time period, and that the bond posted by Summit caused Servewell's lien to be discharged. Servewell

---

[1] Servewell filed a first amended complaint on April 22, 2003, alleging for the first time that it had perfected its lien.

responded that, regardless of the bond, it still had an unjust enrichment claim against the Gables.

The trial court held a hearing on the motions to dismiss and on the Gables' motion for judgment on the pleadings on December 2, 2003. After the hearing, the trial court granted Summit's motion to dismiss on venue grounds, citing the forum-selection clause in the contract. In addition, the court granted the Gables' motion for judgment on the pleadings, finding that Servewell had defaulted by not filing a separate response to the motion, and alternatively finding that the posting of the bond mooted the lien claim. The court, however, reserved ruling on Servewell's unjust enrichment claim.

Servewell filed a second amended complaint on January 7, 2004, specifically alleging that the lien was timely because its affidavit of account had been filed within 120 days of the last date Servewell supplied labor and material. The Gables and Summit again moved to dismiss the complaint; Summit once more raised the issue of the forum-selection clause. The trial court granted Summit's motion to dismiss Servewell's second amended complaint on May 11, 2004.[2] On appeal, Servewell raises four points for reversal.

In its first argument on appeal, Servewell argues that the trial court erred in granting Summit's motion to dismiss and enforcing the choice-of-forum clause. Servewell asserts that the clause was unenforceable under either Arkansas or Florida law, and that the court erred in failing to apply Florida law. The clause at issue in the contract between Servewell and Summit provided as follows:

ARTICLE 23: CHOICE OF LAW AND VENUE

This Subcontract shall be construed in accordance with the laws of the State of Florida. [Servewell] expressly agrees to be subject to

---

[2] Servewell initially filed a notice of appeal on May 19, 2004, seeking review of both the May 11, 2004, and December 31, 2003, orders. When Servewell tendered the record to the clerk's office on November 24, 2004, the clerk's office rejected it, finding that the notice of appeal was untimely. Servewell filed a motion for rule on the clerk, arguing that its notice of appeal from the May 11, 2004 order was timely. This court granted the motion, agreeing that the May 19, 2004 notice of appeal was timely, because the December 31, 2003, order had not been a final, appealable order, and had Servewell appealed from that order, the appeal would have been dismissed. *See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 360 Ark. 521, 202 S.W.3d 525 (2005) (*per curiam*).

personal jurisdiction in the State of Florida and further waives any right to venue in any action brought under this Subcontract Agreement or against any bond posted by [Summit]. [Servewell] acknowledges that [Summit's] bonding company is an intended third-party beneficiary of this jurisdiction and venue provision. [Summit] has the sole option to select venue in Duval County, Florida, or the site of this project, for any action it brings under the Subcontract Agreement. In any action brought against [Summit] or its bonding company under this Subcontract Agreement, jurisdiction and venue shall be in Duval County, Florida, unless and until [Summit] stipulates to jurisdiction and venue at the site of the project.

Despite the forum-selection clause, Servewell filed suit in Pulaski County, Arkansas. In its answer, Summit specifically objected to venue in Pulaski County on the basis of the forum-selection clause, and affirmatively stated that Servewell's complaint should be dismissed for improper venue and lack of personal and subject matter jurisdiction. As noted above, the trial court granted Summit's motion to dismiss. In reviewing a trial court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the Plaintiff. *Wilmans v. Sears, Roebuck and Co.*, 355 Ark. 668, 144 S.W.3d 245 (2004). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.*

Servewell first argues that the trial court erred in applying Arkansas law in determining whether to enforce the forum-selection clause. This court has generally held that choice-of-forum clauses in contracts are binding, unless it can be shown that the enforcement of the clause would be unreasonable and unfair. *RMP Rentals v. Metroplex, Inc.*, 356 Ark. 76, 146 S.W.3d 861 (2004); *Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991); *SD Leasing, Inc. v. Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982). Nonetheless, the determination of subject-matter jurisdiction is paramount. Parties may by agreement consent to personal jurisdiction in a given court, but subject-matter jurisdiction cannot be conferred merely by agreement of the parties. *See Hardy Construction Co., Inc. v. Arkansas State Highway & Transportation Dept.*, 324 Ark. 496, 922 S.W.2d 705 (1996). While a forum-selection clause implies consent as to personal jurisdiction, *see SD Leasing, Inc., supra*, it cannot confer subject-

matter jurisdiction over *in rem* proceedings. *Publix Super Markets, Inc. v. Cheesbro Roofing, Inc.*, 502 So.2d 484 (Fla. Dist. Ct. App. 1987).

In connection with this latter point, Servewell relies heavily on *RMP Rentals, supra*, a case involving a materialmen's lien. RMP was a general contractor with its corporate office in Louisiana; it subcontracted with Metroplex, Inc., an electrical engineering firm located in Arkansas, to install electrical services in a post office. The contract was executed in Louisiana, and contained a forum-selection clause providing that Rapides Parish, Louisiana, would be the forum for any civil suit arising out of the contract. Metroplex filed a foreclosure complaint in Sebastian County, Arkansas, alleging that RMP had failed to pay on a percentage of the work completed. RMP moved to dismiss on the basis of the forum-selection clause, but the trial court denied the motion, finding that the suit was an *in rem* proceeding on a materialmen's lien, and the property subject to the lien was located in Arkansas. *RMP Rentals*, 356 Ark. at 79.

This court affirmed, holding that, while the courts of Louisiana would have subject-matter jurisdiction over an *in personam* action, the nature of the foreclosure complaint was *in rem*. Citing *Publix Super Markets, supra*, a case involving a forum-selection clause establishing Florida as the forum for actions brought on a contract, our court noted the following:

> [P]ursuant to [Florida] statute, an agreement that has the effect of placing venue in a county, other than the one in which the land to be foreclosed is located, is ineffective because such an action requires *in rem* court jurisdiction, and only a court with geographic jurisdiction over the county where the land is located has *in rem* jurisdiction. In so holding, the [*Publix Super Markets*] court noted that foreclosure of land based on a mechanic's lien is analogous to foreclosure of a mortgage on land by seeking to judicially convert a lien interest against title to land, into a legal title to land. The result, the [Florida] court found, is that the court is required to act directly on the title to the property. *Id.* We agree. Under our statutes, a judicial proceeding on a materialmen's lien as to land is an *in rem* proceeding.

*RMP Rentals*, 356 Ark. at 81. Because Metroplex had specifically filed a foreclosure complaint on its materialmen's lien, this court held that the suit was an *in rem* proceeding, and Arkansas courts, not Louisiana courts, had jurisdiction to enforce the lien.

Servewell relies on *RMP Rentals* as well as several cases from Florida for its argument that, because it sued on its lien, venue should remain in Arkansas. *See Miller & Solomon General Contractors, Inc., v. Brennan's Glass Co., Inc.*, 837 So.2d 1182 (Fla. Dist. Ct. App. 2003) (despite venue selection clause to the contrary, venue for a lien action and bond is in the county where the property is located); *Carlson-Southeast Corp. v. Geolithic, Inc.*, 530 So.2d 1069 (Fla. Dist. Ct. App. 1988) (parties to a contract may agree as to venue and such agreements will be enforced, unless the action is *in rem*); *Halls Ceramic Tile, Inc. v. Tiede-Zoeller Tile Corp.*, 522 So.2d 111 (Fla. Dist. Ct. App. 1988) (in litigation involving improvements to real property where bonds have been posted to exempt the property from foreclosure of mechanics' liens, the proper forum to settle all such actions is the court where the real property is located and the security is posted). Servewell insists that its action is an *in rem* proceeding, and therefore, the trial court erred in granting Summit's motion to dismiss on the basis of the forum-selection clause.

Thus, the first question this court must address is whether Servewell's complaint was an *in rem* proceeding. In its original complaint, filed on February 10, 2003, Servewell asserted that the property on which it had performed work was "subject to [Servewell's] lien, although [the] lien is not yet perfected." In its first amended complaint, filed April 22, 2003, Servewell removed the assertion that the lien had not been perfected, alleging instead that the property was subject to Servewell's lien. However, the original complaint never alleged that Servewell was attempting to enforce its lien; instead, the only claims Servewell initially pursued were for breach of contract and unjust enrichment. It was not until Servewell's first amended complaint that Servewell mentioned enforcement of its lien, contending for the first time that it was pursuing an *in rem* proceeding.

Under Ark. Code Ann. § 18-44-117 (Repl. 2003), a person seeking to enforce a materialmen's lien must "file, with the clerk of the circuit court of the county in which the . . . improvement to be charged with the lien is situated and *within one hundred twenty (120) days after the . . . work or labor done or performed,* a just and true account of the demand due or owing to him or her after allowing all credits." (Emphasis added.) Servewell's complaint and first amended complaint alleged that it had provided labor and materials for the project through November 8, 2002. One hundred twenty days from that date would have been March 8, 2003. However,

Servewell's affidavit of account was not filed with the Pulaski County Circuit Clerk until March 12, 2003.

 The Arkansas lien statute is construed strictly because it is an extraordinary remedy not available to every merchant or worker. *Christy v. Nabholz Supply Co., Inc.*, 261 Ark. 127, 546 S.W.2d 425 (1977). This court has held that a lien filed outside the statutory time period is not effective or enforceable. *See, e.g., Arkansas Louisiana Gas Co. v. Moffitt*, 245 Ark. 992, 436 W.W.2d 91 (1969); *Smith v. Grandbush*, 233 Ark. 806, 348 S.W.2d 880 (1961). Here, because Servewell's affidavit of account was filed outside of the 120 days allowed by statute, the lien was not perfected. Therefore, Servewell's complaint could not have been an *in rem* action to enforce its lien; only Servewell's breach-of-contract and unjust enrichment claims remain, and they are not *in rem* proceedings. As such, the forum-selection clause can be enforced.

We return, then, to the question of whether the trial court properly enforced the forum-selection clause and dismissed the case in favor of the Florida courts. As mentioned above, this court has held that choice of forum clauses in contracts will generally be held binding, unless it can be shown that the enforcement of the forum-selection clause would be unreasonable and unfair. *Nelms, supra* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). The modern trend among courts is to respect the enforceability of contracts containing clauses limiting judicial jurisdiction, if there is nothing unfair or unreasonable about them. *Id.*

 Traditionally, we have adhered to the view that an individual who subjects himself to the personal jurisdiction of a court by express agreement shall be bound by that contract, if the agreement can be determined to be fair and reasonable. *Id.*; *SD Leasing, Inc., supra*. Here, Summit is a Florida corporation. Servewell voluntarily entered into a contract with that Florida corporation and signed the contract by which it expressly consented to and selected the jurisdiction of the Florida courts. Servewell did not object to the presence of the forum-selection clause when it signed the contract. Despite this, Servewell argues that the forum-selection clause is unreasonable because the Florida courts are inconvenient. However, in *M/S Bremen v. Zapata Off-Shore, supra*, the United States Supreme Court specifically rejected the view that a forum clause may be unreasonable if the

chosen forum is inconvenient, because the parties contemplated such inconvenience when they entered into the agreement. The Court explained:

> Whatever "inconvenience" Zapata would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting. In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

*Id.* at 17-18. Thus, for a forum clause to be unreasonable or unfair, it must do more than inconvenience a party; it must effectively deprive the party of its day in court. *Manrique v. Fabbri*, 493 So.2d 437 (Fla. 1986). Here, Servewell has not alleged that it would effectively be deprived of its day in court; it simply argues that it would be inconvenient and expensive to have to try its case in Florida. This is an insufficient reason for finding the forum-selection clause invalid.

Servewell raises a second argument in its first point on appeal, asserting that the trial court should have applied Florida law in determining whether to enforce the forum-selection clause, because the contract expressly provided that it was governed by Florida law. Servewell contends that, under Florida law, "a forum-selection clause designating Florida as the forum cannot, standing alone and without any other connection, allow Florida to exercise personal jurisdiction over the objection of a non-resident defendant." *See McRae v. J.D./M.D., Inc.*, 511 So.2d 540 (Fla. 1987); *Four Star Resorts Bahamas, Ltd. v. Allegro Resorts Mgmt. Servs., Ltd.*, 811 So.2d 809 (Fla. Dist. Ct. App. 2002). In *McRae*, the Florida supreme court held that "[c]onspicuously absent from [Florida's] long-arm statute is any provision for submission to *in personam* jurisdiction merely by contractual agreement." *McRae*, 511 So.2d at 543. In sum, the *McRae* court held that there must be an independent basis for Florida to exercise jurisdiction.

Servewell leans heavily on this holding to support its claim that a Florida court would find the forum-selection clause to be unreasonable and unenforceable. However, the key feature that distinguishes *McRae* and *Four Star Resorts, supra*, from the present case is that both of the Florida cases involved *non-resident plaintiffs*

*and defendants* who had no contact with Florida other than the forum-selection clauses in their contracts. Here, on the other hand, the defendant, Summit, *is a Florida corporation.*

Our court of appeals recently addressed a nearly identical situation in *Parsons Dispatch, Inc. v. John J. Jerue Truck Broker, Inc.*, 89 Ark. App. 25, 199 S.W.3d 686 (2004). In that case, Parsons Dispatch, an Arkansas corporation, contracted with a Florida company, John J. Jerue Truck Broker, Inc. The contract contained a forum-selection clause designating Florida as the venue for all disputes. Parsons Dispatch sued Jerue in an Arkansas court for breach of contract, and Jerue moved to dismiss on the basis of the forum-selection clause. The trial court granted the motion to dismiss, and the court of appeals affirmed. Like Servewell in the instant case, Parsons Dispatch argued that, under Florida law, the forum-selection clause could not serve as the sole basis for the exercise of jurisdiction in Florida. The court of appeals rejected this argument, writing as follows:

> *McRae* . . . [is] inapplicable in the present case because Jerue is not seeking to enforce the contract in Florida against Parsons Dispatch. Instead, Parsons Dispatch is bringing suit to recover the commissions owed by Jerue, a Florida business. If Parsons Dispatch is forced to litigate this matter in Florida, there will be no question of . . . Jerue's contacts with that state arising out of activities occurring in that state. In judging "minimum contacts," the focus is on the defendant, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1983). *A plaintiff is not required to have minimum contacts with the forum state. Keeton, supra; Moran v. Bombardier Credit, Inc.*, 39 Ark. App. 122, 839 S.W.2d 538 (1992).

*Parsons Dispatch*, 89 Ark. App. at 33 (emphasis added).

▪ Further, under Florida law, a forum-selection clause will only be set aside where 1) the clause is tainted by fraud; 2) the clause is a product of overwhelming bargaining power of one party; or 3) the clause is the sole basis upon which to base jurisdiction. *Golden Palm Hospitality, Inc. v. Stearns Bank Nat'l Ass'n*, 874 So.2d 1231 (Fla. Dist. Ct. App. 2004). Here, Servewell never alleged either of the first two bases, and it is clear that the third does not apply, because Summit is a Florida corporation, thus providing a basis other than the clause for jurisdiction in the Florida courts. In sum, even applying Florida law, we conclude that the trial court did not err in enforcing the forum-selection clause.

In its second point on appeal, Servewell argues that the trial court erred in granting the Gables' motion for judgment on the pleadings. In its answer to Servewell's first amended complaint, the Gables asked the trial court to grant it judgment on the pleadings, because Servewell had failed to file its lien with the Pulaski County Circuit Clerk within the 120 days allowed by § 18-44-117. Attached to the Gables' motion for judgment on the pleadings were copies of Servewell's affidavit of account, reflecting a filing date of March 12, 2003, Servewell's "cap sheet" for the lien, and Servewell's letter to Summit and the Gables, notifying them of its intent to file the lien. Ordinarily, when matters outside of the pleadings, including affidavits, are presented to and not excluded by the court, the motion becomes a motion for summary judgment. *See* Ark. R. Civ. P. 12(c) (2005).[3]

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Riverdale Development Co. v. Ruffin Building Systems Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004). The burden of sustaining a motion for summary judgment is the responsibility of the moving party. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the non-moving party must meet proof with proof and demonstrate the existence of a material issue of fact. *O'Marra v. MacKool*, 361 Ark. 32, 204 S.W.3d 474 (2005). When a party fails to meet proof with proof and does not demonstrate that a material issue of fact exists, summary judgment is appropriate. *Saine v. Comcast Cablevision of Arkansas*, 354 Ark. 492, 126 S.W.3d 339 (2003).

■ On appeal, Servewell argues that the trial court erred with respect to both grounds on which it granted the Gables' motion. Regarding the trial court's granting of the motion by

---

[3] Here, although the trial court specifically ruled that it would not consider anything outside of the pleadings, the court's ruling reflected that the court granted the Gables' motion for judgment on the pleadings on two grounds: first, that Servewell did not respond to the Gables' motion, and the motion should therefore be granted by default; and second, that Summit had posted an adequate bond against Servewell's claim, and the lien was therefore null and void as against the Gables. The second basis was not argued in the Gables' motion; therefore, it is apparent that the trial court looked to matters outside of the pleading. We therefore review this case as we would an appeal from an order granting summary judgment. *See Godwin v. Churchman*, 305 Ark. 520, 810 S.W.2d 34 (1991).

default, Servewell argues that it did, in fact, respond to the argument that its lien was untimely. However, a review of the pleadings in Servewell's Addendum reveals that Servewell actually did not respond to the Gables' motion before the time of the hearing. Servewell did not respond to the allegation that its lien was not timely perfected until it filed a "motion to reconsider" on December 11, 2003.[4] Servewell's failure to respond to the Gables' motion constituted a failure to meet proof with proof, and the trial court did not err in granting the Gables' motion in this respect.

■ Servewell claims further that it should have made no difference when it filed the affidavit of account, because Servewell filed suit within 120 days and alleged the existence of its lien in the complaint. Here, Servewell relies on *Wiggins v. Searcy Federal Savings & Loan Association*, 253 Ark. 407, 486 S.W.2d 900 (1972). In *Wiggins*, this court held that "the filing of a suit . . . to preserve and enforce the lien within the 120-day period is a substantial compliance with the statute which cures the omission to file the account with the circuit clerk." *Wiggins*, 253 Ark. at 410. However, this argument is without merit, because Servewell's original complaint — which admittedly was filed within 120 days of its provision of work or labor on the project — was not brought as a lien foreclosure action; instead, as discussed above, the only claims raised in the original complaint were for breach of contract and unjust enrichment.

■ Next, Servewell contends, without citation to authority, that the motion for judgment on the pleadings was premature. This argument is also without merit. Rule 12(c) provides that a motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed, but within such time as not to delay the

---

[4] Servewell claims that it responded to the motion for judgment on the pleadings in its July 25, 2003, response to Summit's motion to dismiss the Gables. However, that pleading contains only a naked assertion that Servewell "provided all notices required by law, timely filed its affidavit of lien, and commenced this lawsuit within 120 days of supplying labor and materials to the project in question." It did not support this allegation with any kind of proof. Further, Ark. R. Civ. P. 12(i) provides that responses in opposition to a motion filed under Rule 12 "shall be made as provided in Rule[ ] 6(c) . . ." Rule 6(c) gives a party ten days to respond to a motion; here, the Gables' motion for judgment on the pleadings was filed on May 29, 2003. Even assuming that Servewell's response on July 25, 2003, was a response to the Gables' pleading (as opposed to a response to Summit's pleading), it was untimely under Rule 12(i).

trial[.]" Here, the "pleadings" consisted of the complaint, first amended complaint, and the answers of Summit and the Gables. Once those pleadings had been filed, the motion for judgment on the pleadings was timely.

■ In a second subpoint, Servewell argues that the trial court erred in dismissing its lien claim on the Gables' motion because there was a question of fact as to whether its affidavit of account was filed within the 120-day period. However, as discussed above, Servewell failed to respond to the Gables' contention that the lien was untimely. Therefore, Servewell's failure to meet proof with proof on this issue in a timely fashion rendered summary judgment appropriate.

Finally, Servewell argues that the trial court erred in its alternative reasoning — i.e., that the filing of the lien transfer bond mooted Servewell's lien claim. Under Ark. Code Ann. § 18-44-118 (Repl. 2003), a person desiring to contest a lien filed pursuant to § 18-44-117 "may file with the circuit clerk or other officer with whom the lien is filed as required by law a bond with surety, to be approved by the officer in double the amount of the lien claimed." § 18-44-118(a)(1). Further procedures are set out in the statute, as follows:

> (b)(1)(A) Upon the filing of the bond, if the circuit clerk or other officer before whom it is filed approves the surety, he or she shall give to the person claiming the lien, at his or her last known address, three (3) days' notice of the filing of the bond.
>
> . . . .
>
> (B) At the expiration of three (3) days, *if the person claiming the lien shall not have questioned the sufficiency of the bond or surety or if the clerk finds the same to be sufficient,* the clerk shall note the filing of the bond upon the margin of the lien record and *the lien shall thereupon be discharged and the claimant shall have recourse only against the principal and surety upon the bond.*

§ 18-44-118(b) (emphasis added).

■ Under the plain language of this statute, once the circuit clerk approved the bond on June 26, 2003, the lien was discharged; indeed the release of lien specifically declared that Servewell's lien was "null and void." At that point, Servewell had

recourse only against the principal and surety upon the bond. In this case, the principal was Summit. Servewell was left with no claim against the Gables, and the trial court properly dismissed the Gables from the action.

Servewell's third point on appeal challenges the trial court's dismissal of Servewell's unjust enrichment action against the Gables. In its complaint and amended complaints, Servewell had alleged that the value of the Gables' project and the land on which it was situated had been enhanced as a result of Servewell's improvements, and the Gables had thereby been unjustly enriched. The trial court dismissed the claim when it granted Summit's motion to dismiss Servewell's second amended complaint on May 11, 2004, on the grounds that the express contract between Servewell and Summit barred Servewell from asserting an unjust enrichment claim.

Unjust enrichment is an equitable doctrine. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). However, the concept of unjust enrichment has no application when an express written contract exists. *Id.*

On appeal, Servewell argues that the rule barring recovery in quasi-contract where there is an express contract "has no application to claims against third parties." While there does not appear to be any Arkansas case law on this precise issue, the Second Circuit Court of Appeals has held that it is a "settled principle" that "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." *See U.S. East Telecommunications, Inc. v. US West Communications Services, Inc.*, 38 F.3d 1289, 1296 (2d Cir. 1994). The Second Circuit also noted that a subcontractor could recover from a landowner, even when a separate contract exists between the subcontractor and general contractor, *if* the owner has agreed to pay the general contractor's debt or if the circumstances surrounding the parties' dealings can be found to have given rise to

an obligation to pay. *Id.* at 1298. In the instant case, however, there is no evidence of any such agreement between Summit and the Gables; therefore, this exception is not applicable, and the general rule — that one cannot recover in quasi-contract when an express contract exists — governs the matter. As such, the trial court did not err in dismissing Servewell's unjust enrichment claim against the Gables.[5]

Finally, Servewell asks this court that, in the event we affirm the trial court's rulings, we do so without prejudice to Servewell's claims. It argues that the merits of its complaint have never been heard, because the matter below was decided primarily on the basis of the venue clause. For that reason, Servewell asks that, in the event this court affirms, "such ruling be made without prejudice to Servewell's right to pursue its claims in Florida."

However, Arkansas law is well settled that, when a plaintiff elects to appeal rather than plead further where both options are available, then the option to plead further is waived in the event of affirmance by the appellate court. *See, e.g., Cotton v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001) (should a plaintiff elect to appeal rather than plead further the option to plead further is waived in the event of affirmance by the appellate court); *Hunt v. Riley*, 322 Ark. 453, 909 S.W.2d 329 (1995). Here, Servewell could have taken a voluntary nonsuit prior to the trial court's dismissal of its complaint and filed the matter in Florida in accordance with the forum-selection clause. Because it elected to appeal rather than to plead the case properly in Florida, there is no basis for granting its request to make our affirmance "without prejudice."

---

[5] The trial court's dismissal of the unjust enrichment claim was correct for another reason. As discussed above, once Summit posted its bond in response to Servewell's alleged lien, Servewell was left with recourse only against Summit and its surety. *See* § 18-44-118(b)(1)(B). As such, any claim Servewell might have had against the Gables disappeared.