SLIP OPINION

Cite as 2017 Ark. App. 156

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-664

| | |
|---|---|
| | Opinion Delivered: March 8, 2017 |
| MICHAEL DOUGLAS | APPEAL FROM THE GRANT |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 27CV-15-64] |
| V. | |
| | HONORABLE CHRIS E WILLIAMS, |
| | JUDGE |
| SHELBY TAYLOR TRUCKING, INC. | |
| APPELLEE | REVERSED |

## KENNETH S. HIXSON, Judge

Appellant Michael Douglas appeals from the Grant County Circuit Court's judgment awarding appellee Shelby Taylor Trucking, Inc. (Shelby) damages for unjust enrichment. On appeal, appellant contends that the trial court erred when it entered judgment against him for unjust enrichment. We agree and reverse.

Douglas owned forty acres of timber land in Grant County, Arkansas. Douglas retained Derrell Taylor Forest Management (Taylor Management), a forestry-management company, to solicit bids to sell the timber on his land. Shelby submitted the highest bid of $65,837.80 to Taylor Management. The payment was divided into two payments—one to Douglas in the amount of $59,254.02 and the other to Taylor Management for its commission in the amount of $6,583.78. On January 5, 2013, a timber deed, (Timber Deed), prepared by Taylor Management, was executed by Douglas and provided to Shelby. In pertinent part, the Timber Deed provided,

Unless extension of time is granted in writing by Sellers, the timber sold under this agreement shall be cut and removed from the above described land by 31 December 2014. Title to any timber sold under this agreement and remaining on the lands described above after such deadline or any extension thereof shall revert to Seller. Purchaser should follow [Best Management Practices] as prescribed by the Arkansas Forestry Commission. Wet weather logging will not be allowed.

After over twenty months into the twenty-four-month contract, Shelby contacted Derrell Taylor (Derrell), with Taylor Management, to obtain an extension of the deed. On November 12, 2014, Derrell sent an email to Douglas that stated,

Shelby Taylor Trucking is going to need an extension to get the timber harvested on the 40 acres. It was scheduled for this year, but it has stayed wet all year long and cannot be logged without tearing the place all to pieces (if it could be done at all). Some folks just let them have the extension but it is not unusual for the owner to charge something. 10% is not uncommon . . . it's up to you . . . How would you like to proceed.

In response, Douglas sent the following email to Derrell on November 13, 2014:

This is unexpected. I have a guy who looks after the 40 for me. I'll talk to him as soon as this coming bad weather passes. He checks the place almost every day and knows the conditions there.

There was no evidence that Douglas's November 13, 2014 email to Derrell was ever forwarded or communicated to Shelby, nor did Douglas extend the contract. The Timber Deed expired by its own terms on December 31, 2014.

Shelby filed a complaint against Douglas for declaratory judgment, unjust enrichment, and injunctive relief. Shelby alleged that the summers of 2013 and 2014 were unusually wet, and Shelby was unable to remove the timber under the conditions imposed by the Timber Deed. Shelby further alleged that although it sought an extension because of the wet weather, "Douglas and his agent delayed providing a response to the request for an extension until after December 31, 2014." Douglas filed an answer to the complaint,

generally denying the allegations. He specifically alleged that Shelby had waived its right to harvest the timber pursuant to the explicit terms of the Timber Deed and by Shelby's failure to act in a timely and reasonable manner.

Douglas subsequently filed a motion for summary judgment. After a hearing, the trial court denied the motion for summary judgment. In its order denying Douglas's motion, the trial court found that although no ambiguity existed in the contract, a factual question still existed as to whether Shelby had the opportunity to perform the contract as written. A bench trial was held on April 11, 2016.

Bobby Taylor (Bobby),[1] the vice president of Shelby, testified that Doug Hollinger manages the harvesting crews for his company, and it would have taken approximately three weeks to cut the timber on the land in question if the weather was dry. While the work did not necessarily require the three weeks to be consecutive, the company would schedule the weeks to be consecutive for financial reasons. It would cost too much money to move a crew in for only three or four days and then move out. Bobby explained that he had contacted Derrell at the end of September or October 2014 to seek an extension due to extremely wet conditions on the property. Derrell told Bobby that he had trouble contacting Douglas. Bobby testified that Shelby experienced similar weather issues with other tracts of property, and those owners gave extensions. In January 2015, Derrell told Bobby that Douglas was not giving an extension. Bobby admitted on cross-examination that he knew that the wet-logging provisions would be in the Timber Deed before Shelby

---

[1]Bobby Taylor and Derrell Taylor are not related.

paid for the timber. When Bobby was asked whether he felt like Douglas had misled Shelby at any point during the 2013–2014 timber-deed period, Bobby responded that he did not.

Hollinger testified that he had estimated that he would be able to log the property, at best, only three months out of every year. He testified that he visited the property in June 2013, July or August 2013, July 2014, and October 2014. During his visits, he determined that the property was too wet to log without violating the wet-weather prohibition in the deed. On cross-examination, Hollinger admitted that he did not know exactly how many weeks during the time period of the deed that the property would have been dry enough to log. However, he testified that he was sure that there was at least one week of dry weather. Upon further examination, Hollinger admitted that he had stated in his deposition that there were at least four weeks of dry weather in 2013 and 2014.

Douglas (the landowner) testified that he had previously used Taylor Management to sell the timber on the property in 1993 and 2004, and Derrell was acting as his agent in marketing the timber. In exchange for Taylor Management's services, Taylor Management was paid ten percent of the purchase price. Douglas testified that the deeds given in 1993 and 2004 were identical to the deed provided to Shelby. He further testified that he did not do or say anything to prevent Shelby from harvesting the timber. In fact, Douglas testified that he never spoke to any of Shelby's representatives. Although Douglas acknowledged his November 13, 2014 email, he admitted that he never responded to Derrell or had any discussions with anyone else regarding an extension.

During Douglas's testimony, meteorological records on file in the National Centers for Environmental Information showing daily rainfall totals were introduced into evidence

for 2013, 2014, and part of 2015. Douglas testified that he had inspected the property on November 24, 2015, and that the property was dry at that time. After looking at the previous thirty days before that date, meteorological records indicated that the property received over eleven inches of rain, most of which was experienced within the seven days preceding the November 24, 2015 inspection. Douglas stated that, despite the rainfall, the property was dry when he inspected it. Douglas opined that, based on this comparison in 2015 and his comparison of lesser rainfall totals during some months in 2013 and 2014, Shelby should have been able to harvest the timber on his land in either 2013 or 2014.

Derrell testified at trial about the events that took place regarding the Timber Deed as already discussed herein. Derrell admitted that Douglas did not respond to him before December 31, 2014, regarding whether he would be willing to give an extension. Derrell stated that, during the time frame of the Timber Deed, he did not have any other properties that he managed where an extension was requested. However, he admitted that he had never had an owner refuse to give an extension when one was requested. Derrell opined that, based on his familiarity with the property, there was a reasonable assumption that there were at least three weeks in 2013 and 2014 in which the property was dry enough to log.

Finally, Robert Hemmert and his wife, Carole Hemmert, testified. Douglas permitted the Hemmerts to hunt on the timber property. The Hemmerts testified that they had visited the property in 2013 and 2014 and that the property was dry during those visits.

After trial, the trial court filed a memorandum opinion, which was subsequently incorporated by reference into the final judgment entered on April 20, 2016. The trial court made the specific relevant findings:

The Plaintiff alleges impossibility of performance due to wet weather and contract provisions and unjust enrichment.

Summary Judgment denied to the Defendant due to fact issues, but found contract was not ambiguous; the Plaintiff has burden to prove impossibility of performance. During contract period the Plaintiff made four on-site inspections of the property: (1) June 2013, (2) July or August 2013, (3) July 2014, (4) October 2014, each visit land was too wet. The Plaintiff was not aware of any three dry weeks from January 2013, through December 31, 2014. Plaintiff's Exhibit #6 confirms wet periods but Defendant's Exhibit #3 and #2 contradicts statements of the Plaintiff Forester. Some dry periods existed in 2013 and 2014 on Defendants U.S. Department of Commerce, Record of Climatological Observations relied on by both parties.

This data is compelling and due to the Plaintiff only physically viewing the property four times in two years, the Plaintiff fails to prove impossibility of performance or impracticability of performance by preponderance of the evidence. *See Frigillana v. Frigillana*, 266 Ark. 269, 584 S.W.2d 3 (1979); *Smith v. Decatur School District*, 2011 Ark. App. 126 (2011). Respectively none of the Plaintiff's witnesses, in two years, personally discussed problems with the Defendant Michael Douglas. This lack of communication was fatal to the parties understanding of its contract terms.

The Plaintiff attempted to contact the Defendant through his consulting Forester in November 13, 2014, 47 days prior to contract completion, but no response and the Defendant's own contractor had no communication with the Defendant until after contract expired on December 31, 2014. Once again communication problems with the Plaintiff and the Defendant. (Plaintiff Exhibit #5). The Defendant stated in his response to this Forester he would communicate, "I'll talk to my guy as soon as this coming bad weather passes," the Defendant never talked to the Plaintiff or his own consulting Forester about this request from the consulting Forester. The Defendant's testimony was he had the flu on December 19, 2014, and time got away from him. Now the Defendant seeks to keep his timber and the Plaintiff's $59,254.02 paid for timber still standing.

The Plaintiff pleads unjust enrichment and rightfully does so in this case. The Defendant's consulting Forester confirms that an extension is customarily given to the timber purchasers in this situation. Obvious from testimony the Defendant made a decision to not communicate toward the end of the contract to attempt to keep both the timber in place and the money received on the timber deed. Although one is not unjustly enriched by receipt of that to which he is legally entitled; a party must have received something of value to which he is not entitled and which he should restore and there must be some operative act, intent on situation to make the enrichment unjust and compensable. It is not necessary that the party unjustly enriched should have been guilty of some wrongdoing as here Mr. Douglas has obtained something of value to which he was not entitled, to the detriment of Shelby Taylor Trucking, Inc. *See Smith v. Whitener*, 42 Ark. App. 225, 865 S.W.2d 328 (1993).

There is no proof as to value of timber except Plaintiff Exhibit #2 discusses the board feet of the pine and hardwood without value. No values as to whether timber is higher or lower than 2013 when the contract was signed. No clear reason why the Defendant did not communicate with the Plaintiff toward end of contract for extension. The Defendant's consulting Forester, Derrell Taylor, was not made a party of this cause of action for any purpose so Court finds the Defendant is unjustly enriched by his refusal to communicate with his Forester Agent and refusal to address issue of extension of a custom and usage in the trade as stated by his own Forester. (Plaintiff's Exhibit #5). The Defendant cannot have both by refusing to communicate. Judgment for the Plaintiff in the amount of $59,254.02, for Defendant's share of contract proceeds. No proof of offset for timber prices.

Final judgment was entered in favor of Shelby, and this appeal by Douglas followed.

## I. *Standard of Review*

Our standard of review following a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.* Furthermore, in a bench trial, a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *Id.*

## II. *Unjust Enrichment*

In arguing that the trial court erred in entering judgment against him for unjust enrichment, appellant specifically argues that (1) there can be no claim for unjust enrichment where the parties have executed an express contract and appellee failed to prove impossibility or impracticability of performance; (2) appellee assumed the risk that it would not be able to harvest the timber at the time the Timber Deed was executed; and (3) the

trial court erroneously considered customs and usage of trade when the contract between the parties had already been deemed unambiguous as a matter of law. We agree with appellant that the trial court erred in applying the equitable remedy of unjust enrichment in light of the existing contract.

Unjust enrichment is an equitable doctrine. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). For a court to find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. There must also be some operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* One who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right. *Id.* In short, an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain. *Id.*

It is generally held that, when there is an express contract, the law will not imply a quasi- or constructive contract. *Deutsche Bank Nat'l Trust Co. v. Austin*, 2011 Ark. App. 531, 385 S.W.3d 381. The existence of a valid written contract ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005). There are exceptions to the general rule when circumstances surrounding the parties' dealings can be found to have given rise to an obligation to pay. *Austin, supra.* Examples of such exceptions include those in which there has been a rescission at law; where a contract has

been discharged by impossibility or frustration of purpose; or where the parties to a contract find they have made some fundamental mistake about something important in their contract. *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 876 S.W.2d 603 (1994). Although an express contract cannot be circumvented by unjust enrichment, a court of equity may impose the remedy of unjust enrichment to further the ends of justice when the express contract does not exist, is void, or does not provide an answer or fully address a subject. *Austin*, *supra*. Finally, courts should be hesitant to employ a quasi-contractual theory of recovery when an underlying express contract already exists and fairly distributes the risks among the parties involved. *Id*.

A deed is considered to be a contract between a grantor and a grantee. *Stokes v. Stokes*, 2016 Ark. 182, 491 S.W.3d 113. Here, the trial court found that the Timber Deed was clear and unambiguous. Although appellee argued that it was entitled to unjust enrichment because it was impossible for it to perform the contract under the wet-weather conditions, the trial court specifically found that appellee failed to prove the impossibility or impracticability of performance. An express contract existed in this case, which did not require Douglas to grant Shelby an extension and specifically provided that title to any timber that remained on the property after December 31, 2014, reverted back to Douglas. There was no evidence that Douglas prevented Shelby from performing under the terms of the contract, and one who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right. *See Campbell*, *supra*. In short, none of the exceptions apply herein, and we hold that the trial court clearly erred in finding unjust enrichment and reverse. Because we reverse based on appellant's argument

that the express contract precluded unjust enrichment in this case, it is unnecessary for us to address appellant's remaining arguments on appeal. *Harp v. Sec. Credit Servs., LLC*, 2013 Ark. App. 202.

Reversed.

HARRISON and BROWN, JJ., agree.

*Nixon & Light*, by: *John B. Buzbee*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Bruce B. Tidwell*, for appellee.