Cite as 2019 Ark. 412

# SUPREME COURT OF ARKANSAS

No. CV–18–928

| | |
|---|---|
| | **Opinion Delivered** December 19, 2019 |
| CHAD PARNELL, AN ARKANSAS CITIZEN ON BEHALF OF HIMSELF AND ALL OTHER ARKANSAS CITIZENS SIMILARLY SITUATED<br>APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-17-639] |
| V. | HONORABLE LYNN WILLIAMS, JUDGE |
| FANDUEL, INC.<br>APPELLEE | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Appellant Chad Parnell filed a class-action lawsuit against FanDuel, Inc., in the Garland County Circuit Court, alleging violations of the Arkansas Deceptive Trade Practices Act (ADTPA) and unjust enrichment on behalf of himself and the putative class. The circuit court dismissed Parnell's complaint and the class-action allegations. We affirm.

## I. *Background*

Parnell opened an account with FanDuel, which offers Internet-based fantasy sports games on its website, fanduel.com. On June 22, 2017, Parnell filed a class-action lawsuit in the circuit court alleging that FanDuel ran a series of advertisements promoting its fantasy sports games, which informed new subscribers that if they deposited $200 into their account, FanDuel would match their deposit with $200. In his complaint, Parnell alleged that this advertising was illegal because FanDuel did not match his $200 deposit when he opened his

account. Parnell alleged violations of the ADTPA and unjust enrichment on behalf of himself and the putative class. Parnell submitted the following proposed class definition:

> All citizens of the State of Arkansas that subscribed to FanDuel's service by opening an account with a sum of $200.00 from August 1, 2015, to December 31, 2015 (the "Class Period"). Excluded from the Class are the presiding judge, and his/her immediate family members, and Defendant's officers, directors, employees, and agents.

FanDuel subsequently moved to dismiss the action based upon an amendment to the ADTPA passed by the General Assembly in 2017. The amendment, then House Bill 1742, made two alterations to the existing law pertinent to this case. First, it changed the remedy available to civil litigants to the recovery of their "actual financial loss." Second, the amendment prohibited private class actions under the ADTPA. 2019 Ark. Acts 986, §§ 2, 3. In its motion to dismiss, FanDuel argued that Parnell's complaint failed to allege an actual loss and also that the class allegations could no longer be maintained under the amended ADTPA. The circuit court agreed with FanDuel and dismissed both Parnell's complaint and the class allegations.

## II. *Standard of Review and Applicable Law*

In reviewing a circuit court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the party who filed the complaint. *Travelers Cas. & Sur. Co. of Am. v. Ark. State Highway Comm'n*, 353 Ark. 721, 120 S.W.3d 50 (2003). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.*

2

However, Arkansas law requires fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. *Id.*

This court has previously articulated that class-action cases may be dismissed at the pleading stage prior to class certification on an Ark. R. Civ. P. 12(b)(6) motion to dismiss for failure to state facts upon which relief can be granted. *See Speights v. Stewart Title Guar. Co.*, 358 Ark. 59, 65-A, 186 S.W.3d 715 (2004) (supplemental opinion on denial of rehearing); *Kersten v. State Farm Mut. Auto. Ins. Co.*, 2013 Ark. 124, at 1–2, 426 S.W.3d 455, 457. Further, Rule 23(b) calls for the circuit court to determine whether a case can be maintained as a class action "[a]t an early practicable time after the commencement of an action." Ark. R. Civ. P. 23(b).

### III. *Discussion*

Parnell argues that but for FanDuel's advertisements of matching deposits, he would not have created a FanDuel account and deposited $200. As such, he did not receive the benefit of their bargain and lost $200 by taking FanDuel's bait. Because Parnell pled that he was deceived by FanDuel's advertised promise to match $200 deposits with another $200 and did not receive the promised match, he contends he pled cognizable injuries.

Arkansas's rules of civil procedure make clear that a pleading which sets forth a claim for relief must contain a statement in ordinary and concise language with facts showing that the pleader is entitled to relief. Ark. R. Civ. P. 8(a); *see also Ark. Dep't of Envtl. Quality v. Brighton Corp.*, 352 Ark. 396, 102 S.W.3d 458 (2003). Parnell's claim against FanDuel is based on a deceptive-trade-practices theory. The ADTPA includes a catchall provision that prohibits any unconscionable, false, or deceptive act or practice in business, commerce, or

trade. Ark. Code Ann. § 4-88-107(a)(10) (Repl. 2011) To state a claim under the Act, a private plaintiff must allege both (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) an injury resulting from such act. *Skalla v. Canepari*, 2013 Ark. 415, at 14, 430 S.W.3d 72, 82. Parnell fails to allege any cognizable injury under the ADTPA as a result of opening an account with FanDuel.

The ADTPA has always limited recovery in private suits to cases where the plaintiff has suffered "actual" damage or injury. Prior to the 2017 amendment, the ADTPA required a plaintiff to suffer "actual damage or injury." Ark. Code Ann.§ 4-88-113(f) (Repl. 2011). The legislature amended the provision in 2017 to make clear that an injury must result in an "actual financial loss." Ark. Code Ann. § 4-88-113(f)(1)(A) (Supp. 2017). Parnell argues that this provision of the ADTPA that requires "actual financial loss" does not apply to his complaint because it was filed prior to the 91st day after the bill containing the amendment was passed by the General Assembly. Parnell further argues the amendment was a substantive change to the existing law and therefore cannot be applied retroactively.

In this case, it is not necessary to determine whether the amended provision of the ADTPA applies to Parnell. He clearly fails to allege any "actual damage or injury" as required under the previous version of the statute. Parnell relies on the conclusory statement in his complaint that he and putative class members "suffered actual monetary damages because of Defendant's violations of the ADTPA." A complaint must allege facts that state a prima facie cause of action, and such cause cannot be stated using conclusory allegations. *McKinney v. City of El Dorado*, 308 Ark. 284, 824 S.W.2d 826 (1992). Here, Parnell has not alleged that he was unable to withdraw his $200 from his FanDuel account nor has he

4

identified any specific injury—financial or otherwise—as a result of FanDuel's alleged deceptive practices.

On appeal, Parnell attempts to reframe his claim as a failure to receive the "benefit of the bargain." In support of its argument that Parnell failed to allege any actionable injury, FanDuel cites *Wallis v. Ford Motor Co.*, where this court discussed benefit-of-the-bargain damages under the ADTPA. In *Wallis*, this court held that where the only alleged injury is the diminution in the value of the product, a private cause of action is not cognizable under the ADTPA. 362 Ark. 317, 328, 208 S.W.3d 153, 161 (2005). This court further noted that a complaint will not survive a motion to dismiss where it alleges only an "ascertainable loss." *Id.* Parnell seeks to distinguish *Wallis* with two U.S. District Court cases—*M.S. Wholesale Plumbing, Inc. v. Univ. Sports Publ'ns Co., Inc.*, No. 4:07-CV00730 SWW, 2008 U.S. Dist. LEXIS 4159 (E.D. Ark. Jan. 7, 2008), and *Burns v. Toyota Motor Sales, U.S.A., Inc.*, Case No. 2:14-CV-02208, 2016 WL 128544 (W.D. Ark. Jan. 12, 2016). In citing these cases, Parnell asserts that *Wallis* is not controlling, yet the decisions in both *M.S. Wholesale* and *Burns* are inapplicable here. In *M.S. Wholesale*, the court explained the difference between the cases:

> In *Wallis*, the plaintiff sued under the ADTPA alleging that the manufacturer of an SUV concealed a design defect, which led him to purchase the vehicle at a price in excess of its actual value. The plaintiff did not allege personal injury or property damage, nor did he claim that the SUV malfunctioned in any way. The Supreme Court of Arkansas held that "actual damage or injury [under the ADTPA] is sustained when the product has actually malfunctioned or the defect has manifested itself. Where the only injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA." *Walli*s, 36[2] Ark. at 328, 208 S.W.3d at 161.

5

In *Wallis*, the plaintiff could not prove that he did not receive the vehicle he bargained for because the vehicle had not malfunctioned. Unlike the plaintiff in *Wallis*, who suffered a purely pecuniary loss, M.S. is not alleging that it purchased a product with less economic value than represented by the seller. Instead, M.S. claims that it paid for a product that was not at all what USP represented—that is, an advertisement sold on behalf of ATU. The Court finds that M.S. has alleged sufficient facts to satisfy the ADTPA's actual damage requirement.

2008 U.S. Dist. LEXIS 4159, at *9–10. Meanwhile, the court in *Burns* found the plaintiff alleged actual property damage to his vehicle, unlike in *Wallis*, and therefore the action was cognizable under the ADTPA. 2016 WL 128544, at *3.

Neither *M.S. Wholesale* nor *Burns* supports Parnell's contention that he has pled an actionable injury—if anything, these cases further undermine his position. Parnell deposited $200 into his FanDuel account for the ability to enter that money into fantasy sports games; this was Parnell's actual "benefit of the bargain," and he does not argue that he was denied this benefit. Instead, he claims his FanDuel account had less economic value than represented by FanDuel. But as the courts in *Wallis*, *M.S. Wholesale*, and *Burns* make clear, a speculative injury is not cognizable under the ADTPA. Moreover, Parnell failed to plead that he suffered injury or loss as a result of opening a FanDuel account or that he was in any way prevented from spending or withdrawing the $200 he had deposited.

As a final matter, we address Parnell's unjust-enrichment claim against FanDuel. This claim fails because Parnell has not actually alleged FanDuel was unjustly enriched. Unjust enrichment is an equitable doctrine that stands for the principle that one party should not be permitted to unjustly enrich themselves at the expense of another but should be required to make restitution for the benefits received. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101, 122 (2005). As discussed above, Parnell makes no

6

allegation that he was ever prevented from withdrawing his initial deposit from his FanDuel account and thus cannot demonstrate that FanDuel was unjustly enriched. Because Parnell's complaint is devoid of any facts upon which he may be entitled to relief, we find that the circuit court did not err in dismissing his complaint and class allegations.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. In short, Parnell has pled a cognizable harm.

In reviewing a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6) for failure to state facts upon which relief can be granted, the plaintiff's complaint is to be liberally construed. *See, e.g., Hollingsworth v. First Nat'l Bank & Tr. Co.*, 311 Ark. 637, 639, 846 S.W.2d 176, 178 (1993). The allegations in the complaint are to be treated as true, and all reasonable inferences are to be made in favor of sustaining the complaint. *Id.*

The simple substance of Parnell's complaint is as follows: (1) FanDuel, Inc. (FanDuel), advertised that if someone signs up to play fantasy sports games on fanduel.com and makes an initial deposit of $200 into his or her FanDuel betting account, FanDuel would "match" that deposit with $200 of its own; (2) Parnell saw this advertisement and, in response, signed up on FanDuel's website and deposited $200 into his betting account; and (3) FanDuel then failed to match his $200 deposit. The bottom line of the majority's opinion is that Parnell has failed to allege "actual damages" and that his complaint is therefore subject to dismissal pursuant to Ark. R. Civ. P. 12(b)(6) for failure to state facts upon which relief can be granted.

7

However, the majority bases its conclusion upon an erroneous characterization of Parnell's alleged harm: "Parnell deposited $200 into his FanDuel account for the ability to enter that money into fantasy sports games; this was Parnell's actual 'benefit of the bargain,' and he does not argue that he was denied this benefit." (Maj. Opinion, P. 6). This is incorrect—as to both the "bargain" and the "benefit" Parnell was supposed to receive from it. FanDuel's "Terms of Use" are included in the record, and nowhere in those provisions is a new user required to deposit $200—or any other specific amount of money—before he or she can sign up to participate. By the plain language of the agreement, one could sign up on FanDuel without any initial deposit. Instead, the "actual damages" alleged in Parnell's complaint lie with the value of the $200 in betting funds that FanDuel advertised it would put up to *match* his $200 deposit, and with the $200 cash Parnell deposited into his FanDuel account in reliance upon that advertisement. Taking the allegations in Parnell's complaint as true, this is plainly a cognizable harm.

The majority's reliance upon *Wallis v. Ford Motor Co.* is misplaced. In *Wallis*, the plaintiff had filed an Arkansas Deceptive Trade Practices Act (ADTPA) claim alleging that a vehicle manufacturer concealed a design defect, which led the plaintiff to purchase the vehicle when the plaintiff would not have purchased the vehicle had the defect been disclosed. 362 Ark. 317, 208 S.W.3d 153 (2005). The plaintiff did not allege any personal injury or property damage or that the vehicle had ever malfunctioned. *Id.* at 318, 208 S.W.3d at 154. This court held, "Where the only injury is the diminution in the value of the product, a private cause of action is not cognizable under the ADTPA." *Id.* at 328, 208 S.W.3d at 161.

8

This case is entirely different. Parnell did not "purchase" a "product" as the plaintiff in *Wallis* did. Instead, he agreed to participate in FanDuel's "game of skill," just like anyone else who signs up on FanDuel, but with an initial deposit of $200 into his betting account. As alleged in his complaint, Parnell would not have deposited the $200 but for FanDuel's advertised representation that it would match his initial $200 deposit. Put simply, Parnell's alleged damages are not simply "the diminution in the value of the product"; Parnell alleges that he did not receive *any* benefit that FanDuel's advertisement represented Parnell would receive if he made an initial deposit of $200 into his betting account. At present, Parnell has neither received the value of the $200 in betting funds that FanDuel advertised it would provide to match Parnell's deposit of $200 cash, nor has the $200 cash that Parnell deposited in reliance upon the advertisement been returned to him. Accepting these assertions as true, which we must at this stage, Parnell has suffered damages.

The majority concludes that Parnell's complaint, or at least his claim for unjust enrichment, is illegitimate due to his failure to allege that he was prevented from withdrawing the $200 after it was deposited. Without addressing whether a separate prior attempt to recover the thing of value is a necessary requisite to legal claim for unjust enrichment, I note that the majority's conclusion ignores the plain language of FanDuel's "Terms of Use." In section "5. Game Rules," regarding "Withdrawals Generally," the "Terms of Use" provide that "[i]n cases where you have received a bonus or other benefits as a result of your deposit," such as the advertised matching benefit that Parnell contends he was entitled to for his $200 deposit, "and have not yet played through the deposit (entering contests whose total entry fees equal the value of the deposit), FanDuel reserves the right to

9

refuse the withdrawal and/or close the your [sic] account[,]" (first parenthetical in original). Regardless of whether unjust enrichment is an appropriate vehicle here, FanDuel's misrepresenting that it would "match" funds to procure gaming deposits and then place them in legal limbo is exactly the sort of systemic practice that ends up harming consumers and that the ADTPA was implemented to deter.

In short, Parnell's complaint is sufficient to defeat a Rule 12(b)(6) motion for failure to plead damages.

Accordingly, I dissent.

*Steel, Wright, Gray*, by: *Scott Poynter, of Counsel*, and *Nate Steel*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *William A. Waddell, Jr.*, for appellee.